In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4118

ITOFCA, Inc.,

Plaintiff-Appellant,

v.

MegaTrans Logistics, Inc.,

Defendant-Appellee.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 2087--Ruben Castillo, Judge.


Argued November 3, 2000--Decided December 19, 2000


   Before Flaum, Chief Judge, and Easterbrook and
Williams, Circuit Judges.

   Flaum, Chief Judge.  ITOFCA, Inc. ("ITOFCA")
brought suit against MegaTrans Logistics, Inc.
("MegaTrans") alleging that MegaTrans' continual
licensing of a computer software program
constitutes an infringement on a copyright
belonging to ITOFCA. MegaTrans counterclaimed,
seeking termination of ITOFCA's copyright in the
program along with a declaratory judgment that
MegaTrans holds a non-exclusive copyright in the
software. Additionally, MegaTrans asserted in its
counterclaim that ITOFCA has violated the Lanham
Act, 15 U.S.C. sec. 1125, by representing to
MegaTrans customers that ITOFCA is the software
copyright owner. The district court granted
MegaTrans summary judgment after determining
ITOFCA's copyright infringement claim to be
barred by res judicata. In the same order, the
court dismissed all of MegaTrans' counterclaims
without prejudice. ITOFCA now appeals the grant
of summary judgment. For the reasons stated
herein, we find appellate jurisdiction wanting
and therefore dismiss.

I.  BACKGROUND

   ITOFCA is a not-for-profit association that was
created to assist its members in the procurement
of transportation, shipping, and freight
forwarding services. By 1986, ITOFCA had

developed a comprehensive intermodal software computer program that assisted its members in tracking and scheduling their freight shipments. That same year, as part of an asset transfer agreement, ITOFCA transferred ownership of two copies of the software to ITOFCA Consolidators, Inc. ("ICI"), a wholly owned, for-profit corporate subsidiary of ITOFCA. According to ITOFCA, the transfer of software ownership did not include any transfer of the intellectual property rights in the software. From 1987 through 1991, ICI used and modified the software program.

In January of 1991, ICI was forced into bankruptcy. Since the bankruptcy proceedings required that ICI receive court approval for any asset transfer, the company filed a motion with the court requesting authorization to sell one of its copies of the software to a company named Amerifreight. Initially, ITOFCA objected to the sale, but after a hearing clarifying the scope of the sale, the company withdrew its challenge. Amerifreight and ICI subsequently executed an assignment of ICI's rights in the software, and ICI delivered to Amerifreight one of its copies of the software's source code on magnetic tape. In return, ICI received $25,000.

Shortly thereafter, Amerifreight transferred its rights received under the ICI assignment to MegaTrans, the defendant in this matter. MegaTrans slightly altered the software and began to market it under the name MegaLink. Between 1991 and 1998 MegaTrans licensed the MegaLink software to three customers, raising approximately $225,000 in revenue. ITOFCA, which had gone dormant for almost five years, reemerged, contacted MegaTrans, and asserted that it, ITOFCA, owned the copyright in the software program. The parties were unable to come to any agreement regarding the ownership of the intellectual property rights. Thereafter, in March of 1999, ITOFCA applied for and obtained a copyright registration for the comprehensive intermodal software program.

ITOFCA subsequently filed suit in the District Court for the Northern District of Illinois alleging copyright infringement on the part of MegaTrans. In addition to damages, ITOFCA sought to enjoin MegaTrans from further alleged acts of infringement and to have all copies of the software produced in violation of ITOFCA's rights impounded. MegaTrans counterclaimed. In direct opposition to ITOFCA's prayer for relief, MegaTrans sought a declaratory judgment that ITOFCA has no copyright in the software at issue, and that MegaTrans has been assigned on a non-exclusive basis all intellectual property rights

in the software. Furthermore, MegaTrans sought to have ITOFCA's 1999 copyright registration voided. Finally, MegaTrans alleged that ITOFCA, by contacting certain actual and potential customers of MegaTrans and representing to them that ITOFCA holds the copyright to the software, has made misleading descriptions of facts likely to cause confusion, all in violation of 15 U.S.C. sec. 1125, the Lanham Act.

On November 19, 1999, the district court granted summary judgment to MegaTrans. The court found that ITOFCA had been a party to the bankruptcy sale, which it determined to be a judicially authorized final adjudication of the ownership rights. According to the district court, during those proceedings "the Bankruptcy Court, correctly or incorrectly, purported to sell a non-exclusive right to the computer program 'free and clear of all liens, claims and encumbrances.'" ITOFCA, Inc. v. MegaTrans Logistics, Inc., No. 99 C 2087, 1999 WL 1068479, at *3 (N.D. Ill. Nov. 19, 1999). Therefore, the court held that by withdrawing its objection, ITOFCA acquiesced in the sale such that res judicata barred ITOFCA's present attempt to litigate copyright ownership. In entering judgment against ITOFCA, the court noted that it was "mindful that this order may not result in the end of litigation because of MegaTrans' counterclaims." Id. at *4 n.3. However, because it felt that "some of these claims may now be moot," the court "decided to dismiss the counterclaims without prejudice to their refiling in an appropriate amended fashion." Id. In doing so, the court urged the parties to consider settlement of any issues that remained.

ITOFCA appealed to this Court. Recognizing that the district court's decision may not have constituted a final appealable judgement within 28 U.S.C. sec. 1291, on December 10, 1999, we ordered ITOFCA to file a memorandum stating why this appeal should not be dismissed for lack of jurisdiction. On January 24, 2000, we ordered that the appeal should proceed to briefing, and that the issue of appellate jurisdiction be considered along with the merits.

II.  DISCUSSION

Both parties to this litigation maintain that 28 U.S.C. sec. 1291 confers jurisdiction upon this Court to hear the present appeal. That Section provides that "courts of appeal . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. sec. 1291. However, simply because the litigants agree that a judicial determination is a final decision (and thus

appealable under Section 1291), does not make it so. See Union Oil Co. of Cal. v. John Brown E & C, 121 F.3d 305, 309 (7th Cir. 1997). "It is our threshold and independent obligation to make that determination even though both parties agreeably considered the order final and appealable." Horwitz v. Alloy Automotive Co., 957 F.2d 1431, 1435 (7th Cir. 1992).

Whether a decision is final for purposes of sec. 1291 generally depends on whether the decision by the district court "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 467 (1978) (internal quotation omitted). ITOFCA argues that the district court's decision, by granting summary judgment to MegaTrans and dismissing all of MegaTrans' counterclaims, has in effect ended the litigation on the merits, thus allowing appellate review of the summary judgment decision. Had MegaTrans never filed counterclaims, such that this suit only involved ITOFCA's claim which the district court decided in summary judgment, our jurisdiction under sec. 1291 would be undeniable. However, the filing of counterclaims against ITOFCA by MegaTrans calls into question whether there has been a final judgment for sec. 1291 purposes. This is because "[a]n order dismissing a complaint, but not ending the case, is not a final decision and therefore may not be appealed." Albiero v. City of Kankakee, 122 F.3d 417, 418 (7th Cir. 1997).

ITOFCA suggests that the district court's decision dismissing MegaTrans' counterclaims makes this case procedurally indistinguishable from the hypothetical situation in which no counterclaims are ever filed. We disagree. Were MegaTrans' counterclaims dismissed with prejudice, such that there was no possibility of their reemergence, ITOFCA would be correct, and we would proceed to the merits. However, the district court unequivocally stated that it "has decided to dismiss the counterclaims without prejudice to their refiling in an appropriate amended fashion." ITOFCA, No. 99 C 2087, 1999 WL 1068479, at *4. Though earlier cases from this Circuit may not have uniformly held so, we do find that this "form of dismissal does not terminate the litigation in the district court in any realistic sense and so is not a final decision within the meaning of 28 U.S.C. sec. 1291, which authorizes the appeal of such decisions." JTC Petroleum Co. v. Piasa Motor Fuels, Inc., 190 F.3d 775, 776 (7th Cir. 1999); see also Union Oil, 121 F.3d at 309-11; Horwitz, 957 F.2d at 1435-36. To understand why, we need not look beyond the rationale behind the district court's decision and the ramifications of that

decision.

In order to create a final judgment under sec. 1291 and make the order granting summary judgment appealable, the district court had to dispose of all the issues it did not decide in its order. Yet, it would be disingenuous to suggest that by dismissing the claims without prejudice, the district court did dispose of all those issues. Given the district court's order, MegaTrans was free to refile its counterclaims at any point from the moment they were dismissed. Theoretically, the company could have refiled the claims on November 20, the day after the order came down, and had those claims back in the federal court system less than twenty-four hours after they had been dismissed. If the effect of the district court's order was only to separate those claims for a fleeting moment, we do not believe they have been disposed of in a manner that gives rise to sec. 1291 review. The finality requirement of sec. 1291 should be applied practically rather than technically. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). Practically speaking, it is entirely conceivable that while we decide the issue in the Court of Appeals, MegaTrans could refile its counterclaims thereby further developing the same issue and having it adjudicated (at the same time) at the district court level. "We, however, sit to settle only controversies fully developed below." Union Oil, 121 F.3d at 310 (quoting Way v. Reliance Ins. Co., 815 F.2d 1033, 1034 (5th Cir. 1987)). As the Supreme Court has noted, the finality requirement in sec. 1291 evinces a legislative judgment that "[r]estricting appellate review to 'final decisions' prevents the debilitating effect on judicial administration caused by piecemeal appeal disposition of what is, in practical consequence, but a single controversy." Livesay, 437 U.S. at 471./1 Thus for our purposes, we must view the counterclaims dismissed without prejudice as if they are still before the district court, which they could be at any moment. Since we would not have appellate jurisdiction under sec. 1291 if the court had not dismissed the counterclaims, we have no appellate jurisdiction under the circumstances as they now exist.

Our explanation above does not suggest that every instance in which a district court makes a decision on one claim and dismisses the others without prejudice, the decided issue is not immediately appealable. For example, Rule 54(b) authorizes the district court to make immediately appealable a judgment that disposes, with finality, of one or more (but not all) claims, even though other claims remain pending in the district court so that the suit as a whole has

not been finally disposed of by that court. See Olympia Hotels Corp. v. Johnson Wax Dev. Corp., 908 F.2d 1363, 1366 (7th Cir. 1990). Given our view that the dismissal of MegaTrans' counterclaims without prejudice has not created a final decision that allows for Section 1291 review, Rule 54(b) would seem to be an adequate alternative means of gaining appellate jurisdiction. However, that mechanism cannot be employed here. It is implicit in Rule 54(b) that the retained and appealed claims be factually distinct, for otherwise the court of appeals may be forced to analyze the same facts in successive appeals, a form of piecemeal appealing not authorized by the rule. Id.; see also Horn v. Transcon Lines, Inc., 898 F.2d 589, 592 (7th Cir. 1990). Two claims cannot be considered separate merely because one is contained in the complaint, and one is the countercomplaint. See Automatic Liquid Packaging v. Dominik, 852 F.2d 1036, 1037 (7th Cir. 1988). In this instance, if none of the claims in ITOFCA's complaint were duplicated in MegaTrans' counterclaims, the order dismissing the complaint would be appealable. Id. But if the complaint and the counterclaim contain the same claim, there has been no final judgment on the issue. Id. Here, ITOFCA's complaint calls upon the court to decide ITOFCA's and MegaTrans' respective intellectual property rights in the comprehensive intermodal software computer program. MegaTrans' counterclaims, though couched in somewhat different legal terms, call upon this court to make the identical determination. As we have noted, "[I]f the same set of facts is alleged as a breach of contract and as a breach of a statutory duty, or as a violation of federal and of state securities laws, or as a fraud and as a mutual mistake, then as a practical matter there is only one claim, and a Rule 54(b) judgment cannot be entered." Olympia Hotels, 908 F.2d at 1367. Thus here, the counterclaims cannot be considered distinct from the claim in the complaint, and Rule 54(b) cannot create an appealable final decision./2

Even assuming arguendo that the claims were sufficiently distinct for Rule 54(b) purposes, the dismissal without prejudice would be insufficient to create a final judgment. Even if it would have been proper for ITOFCA to ask the district court to enter judgment under Rule 54(b) as to its claim, it did not do so. In West v. Macht, 197 F.3d 1185, 1190 (7th Cir. 1999), and Horwitz, 957 F.2d at 1434, this court faced the same situation and refused to aid the parties by attempting to conform the judgment to Rule 54(b). This refusal is in accord with our practice regarding attempts to appeal from partial judgments not in compliance with Rule 54(b). See West, 197 F.3d at 1190; see also United States v.

Ettrick Wood Products, Inc., 916 F.2d 1211, 1217 (7th Cir. 1990) ("Absent proper entry of judgment under Rule 54(b), an order that determines one claim in a multi-claim case, or disposes of all claims against one or more parties in a multi-party case, is not final and appealable."). And as we have noted in the past, "bending the rules to provide jurisdiction is not a move to be undertaken lightly." West, 197 F.3d at 1189.

At oral argument, when we raised the possibility that the dismissal without prejudice might mean that there has been no final decision for sec. 1291 purposes, we asked MegaTrans' attorney whether the company would represent to the Court that it would not refile its counterclaims. Had MegaTrans done so, we could have treated the district court's dismissal of the counterclaims as having been with prejudice, thus winding up the litigation and eliminating the bar to our jurisdiction. See JTC Petroleum, 190 F.3d at 776-77 (7th Cir. 1999). However, MegaTrans was unwilling to make any such representation and thus we cannot proceed to the merits of ITOFCA's appeal./3

III.  CONCLUSION

Even assuming as we do that MegaTrans has no immediate plans to refile its counterclaims, the present resolution is at best a contingent one. If we were to affirm the district court's grant of summary judgment to MegaTrans, that would in all likelihood put an end to this litigation, as MegaTrans would have no incentive to pursue its counterclaims. During oral arguments, MegaTrans conceded as much. "[B]ut if we reverse the parties will continue to litigate their dispute." Union Oil, 121 F.3d at 309. Assuming we decided to remand this case to the district court, there would be no reason why MegaTrans would not wish to reinstate its counterclaims and present them before the trier of fact. Certainly, the district court, in dismissing those counterclaims without prejudice, envisioned such a possibility. As we have stated, "the fact that the court of appeals could end the litigation does not make a decision on a single issue final." Massey Ferguson Div. of Varity Corp. v. Gurley, 51 F.3d 102, 105 (7th Cir. 1995); see also Horwitz, 957 F.2d at 1436 ("What this court might do or not do with an appeal cannot make final an order that was not."). "This court can do nothing unless it has jurisdiction when the case arrives." Horwitz, 957 F.2d at 1436.

For the foregoing reasons, we Dismiss this appeal for lack of jurisdiction.

/1 The final judgment rule promotes judicial efficiency, as some issues a party seeks to appeal before a final decision may be mooted when the case is finally determined on the merits. Furthermore, the rule helps to avoid piecemeal appeals that may threaten the independence of trial judges and prevents the potential harassment and cost that a series of separate appeals from various individual rulings could create. See Rebecca A. Cochran, "Gaining Appellate Review by 'Manufacturing' a Final Judgment Through Voluntary Dismissal of Peripheral Claims," 48 Mercer L.Rev. 979 (1997).

/2 In addition to Rule 54(b) there exist other mechanisms by which to appeal a decision on one claim while the remaining claims either have been dismissed without prejudice or are still remaining at the district court level. For example, when the issue certified for appeal involves a controlling question of law which the parties have substantial differences of opinion as to the application of, and when the resolution of the question may materially advance the ultimate termination of the litigation, the law allows for an interlocutory appeal. 28 U.S.C. sec. 1292(b). We note in passing that this case does not fit within any of the pigeonholes that would allow such an appeal.

/3 We recognize that this case is procedurally different from others in which we have ruled that a dismissal without prejudice is of no assistance in creating the finality necessary for sec. 1291. Here, it is MegaTrans' counterclaims which are acting to bar a final judgment and thus appellate jurisdiction. While those counterclaims sit in hibernation, ITOFCA is left without an avenue to appeal the district court's decision against it. In fact, the current status of this case provides MegaTrans with no incentive to refile its counterclaims. MegaTrans has won in the court below, and that decision cannot be appealed so long as the statute of limitations on its counterclaims has not expired or those claims have not been adjudicated. Yet, these peculiar circumstances do not factor into our decision that we have no appellate jurisdiction. If ITOFCA wishes this Court to review the merits of the district court's decision it must either wait until the claims are time barred, or return to the district court to have it create a proper final order.