

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-1-2005

# LNC Inv LLC v. Republic Nicaragua

Precedential or Non-Precedential: Precedential

Docket No. 03-1224

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"LNC Inv LLC v. Republic Nicaragua" (2005). *2005 Decisions.* Paper 1516.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1516

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

____

03-1224

_____


LNC INVESTMENTS LLC, f/k/a
Investments, Inc.*,
Appellant

v.

THE REPUBLIC NICARAGUA
(* See Clerk's Order of 5/23/03)

_____


On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 01-mc-00134)
District Judge: Honorable Joseph J. Farnan, Jr.


_____


Submitted on Review of Jurisdiction
February 1, 2005

Before: SLOVITER, AMBRO, and ALDISERT, Circuit Judges.

(Filed    February 1, 2005    )


_____


Elliot H. Scherker
Greenberg Traurig
Miami, FL 33131

Laurie A. Krepto
Scott Salerni
Greenberg Traurig
Wilmington, DE 19801

Raymond A. Levites
Pavelic & Levites
New York, NY 10012

     Attorneys for Appellant

Preeta D. Bansal
Scott D. Musoff
Skadden, Arps, Slate, Meagher & Flom
New York, NY 10036

Scott M. Flicker
G. Hamilton Loeb
Paul, Hastings, Janofsky & Walker
Washington, DC 20004

Philip D. Anker
Wilmer Cutler Pickering Hale & Dorr
Washington, DC 20037

     Attorneys for Appellee

———

OPINION OF THE COURT

———

SLOVITER, Circuit Judge.

     This garnishment action arises from the District Court of Delaware. Although the named parties in the suit are the Republic of Nicaragua and LNC Investments, Inc. ("LNC"), the issue before us arises from LNC's attempt to garnish funds from Megatel, a company which owes $50 million to Nicaragua. The District Court quashed the writ of attachment LNC filed on

Megatel because it concluded that Megatel would be exposed to double liability if the writ were enforced.[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1963.[2] We hold that this court lacks jurisdiction because the District Court's Order quashing the writ of attachment against Megatel was not a final disposition of the case under 28 U.S.C. § 1291.

## I.

A. Megatel's $ 50 million Obligation to Nicaragua

By agreement dated August 31, 2001 ("Enitel Agreement"), the Republic of Nicaragua sold forty percent of the authorized and outstanding shares of Empresa Nicaraguense de Telecomunicaciones S.A. ("Enitel"), a state-owned and controlled telecommunications company in Nicaragua, to a consortium formed by Telia Swedtel AB, a Swedish telecommunications company, and EMCE, a Honduran holding company.

The Enitel Agreement provided that the consortium could

---

[1] The District Court reasoned that even if Megatel were to pay LNC pursuant to the writ of attachment, Nicaraguan law would not regard that payment as a discharge of Megatel's obligation to Nicaragua.

[2] 28 U.S.C. § 1963 provides in pertinent part:

A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown.

3

organize a company for the purpose of purchasing the shares, and that "all rights, privileges and obligations granted to the [consortium] through this Agreement shall be transferred ipso jure" to that company. App. at 271. Pursuant to this clause, the consortium formed Megatel to purchase the shares under the Enitel Agreement. On December 18, 2001, Megatel paid $33,100,999 in cash to Nicaragua towards the price for the shares of Enitel as per the Enitel Agreement. In addition, Megatel agreed to pay the remaining $50 million of the agreed price in five annual installments of $10 million a year.

B.  The Republic of Nicaragua's $86 million Debt to LNC

On December 11, 1980, Nicaragua entered into a loan agreement ("Loan Agreement") with a syndicate of banks to restructure its then existing debt. The Loan Agreement provided that Nicaragua would waive its sovereign immunity with respect to any of its obligations arising under the agreement. It further stated that any final judgment secured by lenders in New York federal court "shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law, and [Nicaragua] hereby irrevocably submits to the jurisdiction of the courts of each jurisdiction in which any Person shall seek to enforce such judgment." App. at 112-113.

In the 1980s, Nicaragua was unable to make payments required under the Loan Agreement and defaulted on the loans. In 1986 and 1987, LNC purchased a portion of the debts owed by Nicaragua under the Loan Agreement on the secondary market. LNC then brought suit in the United States District Court for the Southern District of New York for judgment on the loans. In LNC Invs., Inc. v. Republic of Nicaragua, No. 96 Civ. 6360 (JFK) slip op. at 2 (S.D.N.Y. Apr. 2, 1999), LNC was awarded a final judgment of $86,885,856.63 plus $230,000 in attorney's fees.

LNC asserts that it has been unable to retain counsel in Nicaragua to enforce its judgment in the courts of that country. Thus, it has attempted to satisfy its judgment by garnishing the assets of third parties who owe money to Nicaragua. On several

4

occasions, other federal courts have denied such attempts for reasons other than the merits of LNC's judgment. See LNC Invs., Inc. v. Republic of Nicaragua, No. 99-2090, slip op. (S.D. Fla. Oct. 2, 2002) (rejecting LNC's attempt to enforce judgment by serving a writ of garnishment on Swedtel AB, because LNC failed to establish personal jurisdiction over Swedtel AB as a non-resident foreign corporation); LNC Invs., Inc. v. Republic of Nicaragua, No. 96 Civ. 6360 (JFK), 2000 WL 745550 (S.D.N.Y. June 8, 2000) (rejecting LNC's attempt to satisfy judgment by attaching income tax and value-added tax payments owed by American Airlines and Continental Airlines to Nicaragua on ground that the assets were immune from attachment under the Foreign Sovereign Immunities Act ("FSIA")); LNC Invs., Inc. v. Republic of Nicaragua, 115 F. Supp. 2d 358 (S.D.N.Y. 2000) (rejecting LNC's attempt to satisfy judgment by executing on assets of Banco Central de Nicaragua held in the Federal Reserve Bank of New York on ground that assets were immune from attachment under the FSIA), aff'd, 228 F.3d 423 (2d Cir. 2000).

C. The Present Action

On December 12, 2001, LNC registered its foreign judgment with the District Court of Delaware. Thereafter, LNC filed writs of attachment against Megatel, and against its former parent companies, Megatel, LLC and Invertel, LLC.

The writ of attachment against Megatel, LLC (one of the former parents) was filed on May 16, 2002. After receiving no response, LNC served a writ of attachment for contempt on July 12, 2002. On July 15, 2002, Megatel responded to the writ of attachment for contempt stating that it holds no goods or assets belonging to the Republic of Nicaragua. Thereafter, LNC served a subpoena duces tecum on Megatel, LLC to which Megatel, LLC filed a motion for a protective order to quash or modify subpoena.

The writ of attachment against Invertel, LLC (the other former parent) was filed on August 6, 2002. After receiving no response, LNC served a writ of attachment for contempt on

5

September 11, 2002. On September 13, 2002, Invertel, LLC responded to the initial writ of attachment and the writ of attachment for contempt, stating that it holds no goods or assets belonging to the Republic of Nicaragua. No further action was taken on the writ of attachment against Invertel, LLC.

On July 19, 2002, LNC served a writ of attachment against Megatel itself. On November 19, 2002 Megatel moved to quash the writ of attachment against it, arguing that enforcement would subject it to double liability, that the payments in question were immune from attachment under the FSIA, and that the District Court lacked jurisdiction to order attachment of the payments. On December 18, 2002, the District Court issued a memorandum order granting Megatel's motion to quash the writ of attachment, finding that Megatel would be exposed to double liability if the writ were enforced.

On January 16, 2003, LNC filed a notice of appeal from the December 18, 2002 Order quashing the writ of attachment against Megatel. By letter dated February 11, 2003, we directed the parties to respond as to whether LNC's appeal was jurisdictionally defective because "it appears that a writ of attachment remains pending against Invertel." That letter did not refer to the pending writ of attachment against Megatel, LLC, although it is apparent that this writ is pending as well. In response to our letter, LNC moved the District Court to dismiss its pending writs of attachment against both Megatel, LLC and Intervel, LLC, as garnishees for Nicaragua, without prejudice. The District Court granted this request on February 26, 2003.

On August 4, 2004, Megatel was bought by Sercotel, SA de CV ("Sercotel"), a wholly owned subsidiary of America Movil, SA de CV, a publicly traded Mexican company. Thus, at the present time, Megatel, LLC and Invertel, LLC are no longer the parent companies of Megatel.

## II.

To recapitulate, LNC seeks to appeal the order quashing its writ of attachment on Megatel. The issue before us is

6

whether LNC's dismissal without prejudice of its writs of attachment against Megatel, LLC and Invertel, LLC is sufficient to render the case procedurally final for purposes of 28 U.S.C. § 1291.[3]  We hold it is not.

The finality requirement of 28 U.S.C. § 1291 is grounded "not in merely technical conceptions of 'finality,'" but rather on a policy "against piecemeal litigation."  Catlin v. United States, 324 U.S. 229, 233 (1945).  Thus, we have "adhered consistently to the general rule that we lack appellate jurisdiction over partial adjudications when certain of the claims before the district court have been dismissed without prejudice."  Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 438 (3d Cir. 2003); see also Erie County Retirees Ass'n v. County of Erie, Pa., 220 F.3d 193, 201 (3d. Cir. 2000) ("[O]rdinarily we do not have jurisdiction under 28 U.S.C. § 1291 of an appeal from an order partially adjudicating a case when an appellant has asserted a claim in the district court which it has withdrawn or dismissed without prejudice."), cert. denied, 532 U.S. 913 (2001).

We have recognized an exception to this general rule where the claims dismissed without prejudice are "effectively barred."  In those cases, we have held that the district court's order or judgment is final for purposes of § 1291.  For example, in Fassett v. Delta Kappa Epsilon, 807 F.2d 1150 (3d Cir. 1986), the district court granted summary judgment on behalf of four of the five defendants.  Rather than proceed to trial against the fifth

---

[3]  28 U.S.C. § 1291 states in pertinent part,

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

defendant alone, plaintiffs filed a stipulation of dismissal without prejudice against that defendant. Plaintiffs then filed a timely notice of appeal. We <u>sua sponte</u> explored the issue of finality and held that despite the general rule barring partial appeals, plaintiffs' claims against the fifth defendant were "effectively barred" because the statute of limitations on that claim had lapsed at the time the plaintiff entered into the stipulation of dismissal. <u>Id</u>. at 1155. Thus, adopting a practical approach, we held that the finality requirement of § 1291 was satisfied.

Similarly, in <u>GFL Advantage Fund, Ltd. v. Colkitt</u>, 272 F.3d 189, 198-99 n.3 (3d Cir. 2001), the district court twice dismissed without prejudice defendant's counterclaims for lack of specificity. Notwithstanding that the dismissal was without prejudice, we held that we had jurisdiction under § 1291 to hear defendant's appeal from the district court's order granting summary judgment to plaintiff because the district court had determined that defendant's affirmative defenses, which were identical to his counterclaims, failed as a matter of law. Thus, the district court's dismissal of defendant's counterclaims without prejudice effectively barred these claims, and rendered the district court's judgment final.

In the instant case, LNC initiated writs of attachment against Megatel and against Megatel's former parent companies, Megatel, LLC and Invertel, LLC, in its attempt to garnish the $50 million that Megatel owes Nicaragua pursuant to the Enitel Agreement. In order to be able to appeal the District Court's December 18, 2002 Order quashing the writ of attachment against Megatel, LNC has dismissed the pending writs of attachment against Megatel, LLC and Invertel, LLC, but it has done so without prejudice. It argues that the dismissal of Megatel's former parents, albeit without prejudice, effectively bars any future garnishment action against them, rendering the December 18, 2002 Order final.

LNC first contends that as of August 4, 2004, Megatel, LLC and Invertel, LLC are no longer the parent companies of Megatel, and thus, any future garnishment action brought against

8

the former parent companies, predicated on the Enitel transaction, will fail as a practical matter. This argument may be factually correct---it is often the case that the dissolution of a parent subsidiary relationship will completely sever any debt obligations which the parent owes on behalf of the subsidiary. However, such fact – contingent determinations must be made by the district court in the first instance. <u>See, e.g.</u>, <u>Sewak v. I.N.S.</u>, 900 F.2d 667, 673 (3d Cir. 1990) ("As an appellate court we do not take testimony, hear evidence or determine disputed facts in the first instance. Instead, we rely upon a record developed in those fora that do take evidence and find facts."). There is nothing in the record to eliminate the possibility that Megatel, LLC or Invertel, LLC assumed some of the debt obligations of Megatel from the Enitel Agreement, and that these obligations remain with the parent companies even after the sale of Megatel to Sercotel. Thus, even after the August 4, 2004 sale, LNC may have a colorable garnishment action against the former parent companies.[4]

LNC also argues that because both Megatel, LLC and Invertel, LLC's responded to the original writs of attachment by stating that they held no property of the Republic of Nicaragua, their dismissal without prejudice effectively barred any future garnishment action. We are not persuaded. We cannot accept the unilateral assertions of parties opposing a garnishment action as factually determinative.[5]

---

[4] For instance, the Enitel Agreement provides that the transfer of rights from the Telia / EMCE consortium to Megatel "will not relieve the . . . [consortium] of its representations and obligations under [certain clauses] of this Agreement, for which the [consortium] will be severally liable." App. at 271.

[5] Indeed, even after Megatel, LLC responded that it held no assets belonging to the Republic of Nicaragua, LNC filed a discovery motion against Megatel, LLC. This discovery motion remained pending in the District Court until LNC dismissed it without prejudice on February 26, 2003.

Unlike the cases applying the exception referred to above, we are not faced with a straightforward application of law to undisputed fact, as was the case in <u>Fassett</u>, nor is this a case where the District Court made the initial factual and legal determinations which effectively ended the case before it, as in <u>GFL Advantage Fund, Ltd</u>. Accordingly, we hold that LNC's voluntary dismissal without prejudice of the pending garnishment actions against Megatel, LLC and Invertel, LLC, as a practical matter, does not effectively bar a future garnishment action against the parent companies arising from the Enitel Agreement.

Accordingly, the District Court's December 18, 2002 Order is not final for purposes of 28 U.S.C. § 1291.[6] <u>See</u> <u>Fed. Home Loan Mortgage</u>, 316 F.3d at 438 (3d Cir. 2003); <u>Erie County Retirees Ass'n</u>, 220 F.3d at 201 (3d. Cir. 2000). We will therefore dismiss this appeal for lack of jurisdiction.

_____

[6] Such a finding will not deprive LNC of the opportunity for appellate review. <u>See</u> <u>Ohntrup v. Firearms Ctr., Inc.</u>, 802 F.2d 676, 678 (3d Cir. 1986). LNC need only pursue its garnishment action against Megatel, LLC and Invertel, LLC to their conclusion in the District Court, or withdraw those proceedings with prejudice.