# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 09-1509, 09-4030

ARROW GEAR COMPANY and
PRECISION BRAND PRODUCTS, INC.,

*Plaintiffs-Appellants*,

*v.*

DOWNERS GROVE SANITARY DISTRICT, *et al.*,

*Defendants-Appellees*.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 08 CV 4895, 08 CV 5549—**John W. Darrah**, *Judge*.

ARGUED OCTOBER 1, 2010—DECIDED DECEMBER 10, 2010

Before POSNER, KANNE, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. In 2008 the appellees, Arrow and Precision, brought separate suits under section 113(b) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9613(b), seeking contribution—seeking to shift some of the costs that Arrow and Precision had incurred, as a result of having been found liable for groundwater contamina-

tion, to other polluters of the same site. Those other polluters are the defendants in Arrow's and Precision's suits. The district court dismissed the suits as barred by res judicata. We have consolidated the appeals, but discuss only Arrow's appeal because Precision's presents no additional issues. We address issues of appellate and trial-court jurisdiction, res judicata, and interpretation of settlement agreements.

Along with a number of other companies, Arrow operated commercial facilities in Ellsworth Industrial Park, in Downers Grove, Illinois, that used industrial solvents. The solvents leaked into groundwater and contaminated adjacent residential areas. The Environmental Protection Agency began to investigate the contamination in 2002, and later filed an enforcement action. It is continuing to investigate, and, depending on what the investigation reveals, may seek additional relief.

In 2004 a class action, *Muniz v. Rexnord Corp.*, was brought in federal district court on behalf of residents of the contaminated area against a number of the polluters, including Arrow, on a variety of grounds. The suit asked for damages, mainly for impairment of property values. The parties agreed in 2006 to a settlement of (in round numbers) $16 million. The defendants had then to allocate the expense among them, and they did so in a series of agreements. Each agreement, so far as relates to Arrow's present suit (which, remember, is a suit for contribution by one polluter against other polluters), releases in the broadest possible terms any claims for contribution by any defendant against any other

defendant that had been or could have been made "from the beginning of time." But this sweeping release is qualified: the agreement does "not release any claims other than the specified claims and do[es] not release claims that may arise in other litigation or in other contexts related to alleged contamination at the Ellsworth Industrial Park." (We are quoting from one of the agreements, but the others are worded similarly.)

After the settlement agreements were signed (in one instance before), the district court dismissed the *Muniz* suit with prejudice. The court did not reserve jurisdiction to resolve disputes arising out of the settlement agreements—the order of dismissal does not so much as mention them. The defendants in Arrow's suit argue that the dismissal, being with prejudice, is res judicata in the present suit because this suit arises out of the same facts as *Muniz*—the groundwater contamination caused by the leakage of industrial solvents at Ellsworth Industrial Park.

The issue of appellate jurisdiction arises from the fact that the district judge did not dismiss Arrow's suit against all the polluters that it sued. The suit remained pending against two of them. So the dismissal was not a final judgment, appealable under 28 U.S.C. § 1291. Arrow could have asked the judge to enter a final judgment under Rule 54(b) of the civil rules, which permits a district judge, upon finding no "just reason" to delay an appeal, to enter a final judgment—which is then appealable under section 1291—with respect to one or more, but fewer than all, claims or parties. But the

judge was not asked to enter a Rule 54(b) judgment and did not. Instead Arrow took a voluntary dismissal, without prejudice, of its pending claims against the two remaining defendants, thus ending—for the time being at any rate—the litigation in the district court, and then appealed the involuntary dismissal of its claims against the remaining firms that it had sued. As the defendants who were not dismissed (and are thus the appellees in Arrow's appeal) point out, Arrow's maneuver, if allowed, would prevent the entirety of the contested issues, involving all the parties, from being resolved in a single appeal; it would exemplify piecemeal appealing, which is disfavored in the federal court system. When a claim is dismissed without prejudice, the plaintiff can refile it, and if that were done here—if after the decision of this appeal the plaintiff filed new claims against the dropped defendants, as it could do because its dismissal of them was without prejudice— it would be as if interlocutory appeals were freely permissible, with no need to obtain an order under Rule 54(b).

We have held, therefore, that a decision is not final for purposes of appellate jurisdiction if the court rendering it has dismissed one or more of the plaintiff's claims (or one or more of the defendants) with leave to refile. *Taylor-Holmes v. Office of Cook County Public Guardian*, 503 F.3d 607, 609-10 (7th Cir. 2007); *ITOFCA, Inc. v. Megatrans Logistics, Inc.*, 235 F.3d 360, 363-65 (7th Cir. 2000); *West v. Macht*, 197 F.3d 1185, 1189-90 (7th Cir. 1999). This is the rule in most though not all of the other courts of appeals to have considered the issue. Compare *Rabbi Jacob Joseph School v. Province of Mendoza*, 425 F.3d 207, 210-11 (2d Cir.

2005); *LNC Investments LLC v. Republic Nicaragua*, 396 F.3d 342, 346 (3d Cir. 2005); *Swope v. Columbian Chemicals Co.*, 281 F.3d 185, 192-93 (5th Cir. 2002); *Jackson v. Volvo Trucks North America, Inc.*, 462 F.3d 1234, 1238 (10th Cir. 2006), and *Mesa v. United States*, 61 F.3d 20, 22 (11th Cir. 1995), with *Hope v. Klabal*, 457 F.3d 784, 789-90 (8th Cir. 2006), and *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068-70 (9th Cir. 2002).

A dismissal without prejudice doesn't *always* enable a suit to be refiled, even in a different court, and when that is so—the litigation is over, its resolution in the district court final—there is no objection to an immediate appeal. The statute of limitations may have run, as in *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008), or in the cases discussed in *LNC Investments LLC v. Republic Nicaragua, supra*, 396 F.3d at 346. And although dismissal for want of subject-matter jurisdiction (which might be a voluntary dismissal, though it makes no difference whether it is or not) is without prejudice, a suit dismissed on that ground cannot be refiled in the same court; and likewise if the basis for dismissal (and so again a dismissal without prejudice) is *forum non conveniens*, which does not extinguish the claim but does expel it from the court in which it was filed. *Mañez v. Bridgestone Firestone North American Tire, LLC*, 533 F.3d 578, 583-84 (7th Cir. 2008). These dismissals are final from the standpoint of the court that orders them, unlike the case in which dismissal without prejudice of a complaint for failure to state a claim allows the plaintiff to start over in the same court.

This is a "start over" case. Arrow could refile the identical claim in the same court against the two parties that it has dropped, and, if it did, an appeal from the final judgment in the new case would bring up to us many of the same issues as an appeal from a final judgment in this case would have done had the two parties not been dropped. So at argument we gave Arrow's lawyer the following choice: stand your ground and we'll dismiss the appeal, or convert your dismissal of the other two defendants to dismissal with prejudice, which will bar your refiling your claims against them. He quickly chose the second option, committing not to refile the suit against them, and so, because the final judgment in the district court is now definitive, we have jurisdiction of the appeal. *India Breweries, Inc. v. Miller Brewing Co.*, 612 F.3d 651, 657-58 (7th Cir. 2010); *Helcher v. Dearborn County*, 595 F.3d 710, 717 (7th Cir. 2010); *JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 776-77 (7th Cir. 1999). Precision hadn't dismissed any defendants, so we had no occasion to confront its lawyer with a similar choice.

The next issue—the jurisdiction of the district court—arises from a misinterpretation by the district judge and the defendants of cases concerning jurisdiction to enforce settlements of federal lawsuits. The issue in those cases was whether a district court, in dismissing a suit because the parties have settled, and failing as in this case to reserve jurisdiction to resolve issues arising from the settlement agreement, can nevertheless entertain a suit to enforce the settlement even if there is no federal jurisdictional basis (such as diversity)

separate from the basis of federal jurisdiction in the original suit. The cases answer no, the court cannot entertain the suit to enforce the settlement unless there is an independent basis of federal jurisdiction over such a suit. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-82 (1994); *Kay v. Board of Education of City of Chicago*, 547 F.3d 736, 737 (7th Cir. 2008); *Lynch, Inc. v. Samatamason Inc.*, 279 F.3d 487, 489-90 (7th Cir. 2002). The original suit may have been a federal antitrust suit, of which the district court had jurisdiction under 28 U.S.C. § 1331. But if the new suit—a suit to enforce a settlement of the antitrust suit—were between citizens of the same state, and the law on which the new suit was based was state contract law (a settlement is a contract) rather than federal law, the federal court would not have jurisdiction.

These cases are inapplicable, however, because Arrow's suit is based on federal law, namely the contribution provision of CERCLA, and not on any settlement governed by state law. The defendants' defense to the suit is res judicata, and the provisions of the settlements that reserve Arrow's right to sue come in as rebuttal to that defense. The fact that Arrow could not sue in federal court for a declaration that the settlements waive the defense of res judicata (for that would be a suit to enforce the settlements) in this suit is irrelevant, for there is nothing to prevent a plaintiff in a federal suit from interposing a contract governed by state law in order to rebut a defense. The interposition of an agreement to split claims as a riposte to a defense

of res judicata is commonplace. See *Muhammad v. Oliver*, 547 F.3d 874, 877 (7th Cir. 2008); *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1289 (11th Cir. 2004); *Pactiv Corp. v. Dow Chemical Co.*, 449 F.3d 1227, 1231 (Fed. Cir. 2006).

Coming finally to the merits, we face the adamant insistence by the defendants that a dismissal with prejudice bars, by principles of res judicata, a further suit arising from the same set of facts, regardless of what the parties intended. This is false. Litigants who want to split a claim among different suits can do so (subject to a qualification about to be noted). E.g., *Muhammad v. Oliver*, *supra*, 547 F.3d at 877; *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, *supra*, 371 F.3d at 1289; *California v. Randtron*, 284 F.3d 969, 975 (9th Cir. 2002); *Restatement (Second) of Judgments* § 26(1)(a) and comment a (1982); Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 18 *Federal Practice and Procedure* § 4415, pp. 354-55 (2d ed. 2002). Res judicata is a defense. It can be forfeited if not pleaded—so it can be waived expressly.

Maybe, though, there is or should be an exception. The doctrine of res judicata serves institutional as well as private interests—interests similar to those served by forbidding piecemeal appeals. Both res judicata and the final-judgment rule, along with a number of other procedural rules, aim at forcing closely related claims to be consolidated in a single proceeding, whether original or appellate, in order to economize on the expenditure of judicial resources for which litigants don't pay. Suppose *A* and *B* had gotten into a fight and *B* had spat on

*A*, twisted his nose, pulled his hair, and kicked him in the shin. And suppose the parties agreed that they would not plead res judicata in any suits arising from the fight. *A* sues *B* for assault (the spitting), then for battery to his nose, then for battery to his scalp, and then for battery to his chin. We can assume (though we can't find a case) that the courts could refuse to entertain the second, third, and fourth suits—rather than have to empanel four separate juries to resolve the legal issues arising from the fight.

But the limited release effected by the settlements in this case was not gratuitous, as in our hypothetical case. When the *Muniz* case was settled, the EPA, moving with the majestic deliberateness characteristic of government agencies, was still investigating contamination by the firms that had been defendants in that case (which include Arrow and Precision) and was expected to impose additional costs on them, and may continue doing so because its investigative activities have not concluded. Already it is seeking $1 million to reimburse it for the cost of investigating. And because the *Muniz* settlement did not address the contamination of the class members' water supply, the defendants in that suit have, separately from the $16 million settlement of the *Muniz* suit, agreed to connect the houses of the class members to another water-supply system at a cost of some $4 million.

It would have been difficult to settle all possible claims by the cross-claiming defendants before their total liability was determined. So claim splitting—allocation of

the $16 million first, and of the additional $5 million (which will doubtless grow) second—made sense, and the district court should not have forbidden it. True, the order dismissing *Muniz* had not mentioned the settlements, and some of them had postdated the dismissal. But as parties to the settlements the defendants were bound by them regardless of when they were made and whether they were mentioned in a judicial order.

Were there doubt about the scope of the settlements, we would have to remand for further proceedings to still that doubt. But there is no doubt that the settlements confine release to claims by defendants against one another concerning the allocation of the $16 million. So the defendants have no defense of res judicata to the present suits, and the judgment of the district court is therefore reversed with instructions to reinstate the suits.

REVERSED.