NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 30, 2012[*]
Decided May 31, 2012

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 11-2879

| | |
|---|---|
| JOHN VENTRE, et al., *Plaintiffs-Appellees,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| DATRONIC RENTAL CORPORATION, et al., *Defendants* | No. 92 C 3289 <br><br> William J. Hibbler, *Judge.* |
| APPEAL OF: EDMUND J. LOPINSKI, JR., *Defendant-Appellant.* | |

**O R D E R**

Seventeen years ago Edmund J. Lopinski, Jr., intentionally defaulted a civil suit claiming that he and other defendants had looted millions from investment pools they controlled; Lopinski and his lawyers decided that a forthcoming indictment in a parallel

---

[*] The appellees have not submitted briefs and are not participating in this appeal, and counsel for the appellant has advised that oral argument would not benefit the court. *See* FED. R. APP. P. 34(a)(1); CIR. R. 34(f). After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* FED. R. APP. P. 34(a)(2)(C).

criminal investigation made defending the civil suit risky. A default judgment later was entered, and Lopinski also was convicted of wire fraud, 18 U.S.C. § 1343, and sentenced to prison. *See United States v. Lopinski*, 240 F.3d 574 (7th Cir. 2001). In 2005 a final judgment was entered in the civil suit after the remaining defendants had settled with the plaintiffs. Lopinski, who is now out of prison, has commenced a new round of litigation asserting that *he* was the one defrauded. He demands compensation from various persons including the lawyers who represented the plaintiffs in the civil case.

The facts are these: John Ventre and two others filed a class action in 1992 on behalf of investors in limited partnerships formed with general partner Datronic Rental Corporation. Datronic, an Illinois corporation based in Schaumburg, was to use the investors' money to acquire capital assets for leasing and eventual liquidation, but the plaintiffs alleged that Datronic insiders, with the company's outside lawyers and accountants turning a blind eye, had diverted to their personal use more than $20 million in investor funds. The investors accused the defendants of engaging in racketeering and fraud, and they specifically linked Lopinski, the president and controlling stockholder of Datronic, to expenditures for personal stakes in a Chicago condominium project and Schaumburg office building, a lakefront condominium and improvements to his suburban home, two yachts, and an interest in a business jet. Lopinski resigned from Datronic shortly before the civil suit was filed and transferred title to his holdings to other officers. The default was entered against him in 1995.

Meanwhile in 1997, with the civil suit still ongoing, Lopinski was indicted. He pleaded guilty to two counts of wire fraud in April 1998 but afterward moved to withdraw his guilty pleas. The district court denied that motion in June 1999. A few months later, shortly before a hearing to determine the plaintiffs' damages on his 1995 default, *see* FED. R. CIV. P. 55(b)(2), Lopinski fired his lawyers in the civil case and filed a pro se motion to vacate that default, *see id*. Rule 55(c). The judge presiding over the civil case denied that motion and in September 2000 found Lopinski still liable to the plaintiffs for $9.1 million. By then the remaining defendants had settled, and the plaintiffs had partially offset their losses by liquidating $10.9 million in seized assets. The plaintiffs had not yet sold the defendants' interests in the Schaumburg office building, however, so the district court directed that the building's appraised value be offset against the $9.1 million owed by Lopinski. That building sold for more than $10 million in June 2001, and in September the district court entered an order declaring Lopinski's liability to the plaintiffs discharged.

In the criminal case Lopinski initially was sentenced to 48 months in prison. On the government's cross-appeal, however, we overturned the downward adjustment he received for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, and remanded for

resentencing. *Lopinski*, 240 F.3d at 577. The second time the district court imposed a sentence of 63 months, which Lopinski did not appeal.

The civil case had been resolved against all of the defendants by November 2000, and in early 2005 the district court entered a final judgment after the winding down of the affairs of the Datronic limited partnerships. In all of this time, Lopinski never filed a notice of appeal from any of the district court's orders. Then in 2011, through his current lawyer, Lopinski went back to the district court and filed, under the docket number of the 1992 civil case, a 98-page document captioned as a "Verified Petition to Vacate Judgments Obtained by Fraud on the Court." This submission, which cites as its jurisdictional basis a case concerning Federal Rule of Civil Procedure 60(b), levels more than a dozen "charges" of "fraud on the court" against an array of "conspirators" including the plaintiffs' lawyers, Datronic's outside law firm and the lawyers who defended the firm in the civil action, the lawyers for other defendants in the civil case, and several Datronic employees who had worked under Lopinski. According to Lopinski, the company's outside counsel had blessed his use of investor funds but reversed themselves later, his own employees had fabricated a Datronic business report that made him believe he committed fraud, the plaintiffs' lawyers had falsely accused him of racketeering and other conspirators had secretly engineered his federal indictment, some of these conspirators themselves had stolen or squandered Datronic assets, and the lawyers had lied to the district court about the value of Datronic assets and other matters in order to gain approval for settlement terms that the lawyers afterward breached. These are just a sampling of Lopinski's accusations. As relief he asked the court to vacate the default judgment, conduct a rerun of the damages hearing, and order the conspirators to pay him more than $100 million.

Lopinski's "petition to vacate" confounded the few lawyers who appeared for a status hearing in June 2011. Counsel for the plaintiffs noted that Lopinski's filing lists in its caption very few of the parties to the civil suit and directs many of its accusations against persons who are not parties. "It's almost as if it's a hybrid between a complaint and a motion," observed one of the lawyers, without contradiction from Lopinski or his attorney. The newly assigned district judge—the original judge had retired—also questioned how new persons could be brought into a lawsuit by way of a postjudgment motion. Again Lopinski and his lawyer remained silent. The judge invited written responses and set a deadline, but later the same day the court vacated its directive after noticing a judicial conflict. Ten days later Lopinski filed a second document, this time asking the district court to immediately "freeze" funds allegedly still held by one of the Datronic limited partnerships. The next judge assigned to the case, who interpreted Lopinski's "petition to vacate" as being in "the nature of" a motion under Rule 60(b), questioned how it could be filed in a lawsuit almost 20 years old. When Lopinski replied that "there is no statute of limitations on these type of actions," the court answered that Lopinski's motion to freeze

Datronic funds was unreasonable and "not well taken." To this the court added: "I am not even sure that the Court should not go further and dismiss this petition, based upon the fact that the Court feels it is improperly brought and untimely. And that is what the Court is going to do."

Lopinski, who does not dispute the district court's characterization of his "petition to vacate" as one under Rule 60(b), challenges its dismissal primarily on the ground that the court did not explain its conclusion that the submission was "improperly brought." The unexplained dismissal, says Lopinski, violated our Circuit Rule 50, which provides that a judge shall give reasons when the court "resolves any claim or counterclaim on the merits, terminates the litigation . . . or enters an interlocutory order that may be appealed" to this court. But we have never held that Circuit Rule 50 applies to decisions on Rule 60(b), if that is what Lopinski filed. As we noted in *Stoller v. Pure Fishing Inc.*, 528 F.3d 478, 480 (7th Cir. 2008), "the matters described in Rule 50 all refer to events leading up to the final judgment in the case," while Rule 60(b) provides a means to correct a previously entered decision.

More to the point, though, we conclude that the district court said quite enough. To begin, Lopinski's "petition to vacate" is not really a Rule 60(b) motion, at least not in the main. As plaintiffs' counsel recognized, what Lopinski filed is a hybrid that, except for a sliver perhaps falling within Rule 60(b), is really a new lawsuit claiming that mostly new defendants defrauded *him*. And it is a new lawsuit that belongs in state court: Lopinski and most of the persons named in his petition are not diverse, the allegations he makes sound in common-law fraud, and Lopinski's involvement with some of the putative defendants in past litigation does not create federal subject-matter jurisdiction even if the prior suit included federal claims. *See Peacock v. Thomas*, 516 U.S. 349, 355–56 (1996); *Greater Chi. Combine & Ctr., Inc. v. City of Chi.*, 431 F.3d 1065, 1069 (7th Cir. 2005); *U.S.I. Props. Corp. v. M.D. Constr. Co.*, 230 F.3d 489, 498 (1st Cir. 2000); *Sandlin v. Corporate Interiors Inc.*, 972 F.2d 1212, 1214–17 (10th Cir. 1992). Nor does it matter that Lopinski accuses plaintiffs' counsel of breaching the settlement terms they reached with the other defendants in the civil case. Lopinski wasn't a party to those agreements and has no apparent standing to complain about their breach. S*ee Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 501 (7th Cir. 2012); *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 246 (7th Cir. 1992). Morever, settlements are contracts, and a claim of breach—even a breach of a settlement agreement that resolved federal claims in federal court—is a state claim belonging in state court. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994); *Arrow Gear Co. v. Downers Grove Sanitary Dist.*, 629 F.3d 633, 637 (7th Cir. 2010); *Kay v. Bd. of Ed. of City of Chi.*, 547 F.3d 736, 737 (7th Cir. 2008).

Additionally, even if we accept that some thread of Lopinski's filing actually rests on Rule 60, we still would not require further explanation for the district court's ruling.

Lopinski insists that the district court was wrong in calling his submission untimely, and while he is correct that a district court has the inherent power to vacate a judgment at any time because of "fraud on the court," FED. R. CIV. P. 60(d)(3); *Wickens v. Shell Oil Co.*, 620 F.3d 747, 759 (7th Cir. 2010); *Ty Inc. v. Softbelly's, Inc.*, 353 F.3d 528, 536 (7th Cir. 2003), Lopinski's petition does not allege the type of wrongdoing necessary to gain relief under subsection (d)(3) from a final judgment in a civil case. Precisely because there is no deadline for asserting "fraud on the court," such a motion must allege "the kind of fraud that ordinarily couldn't be discovered, despite diligent inquiry, within a year," such as in cases where "there are no grounds for suspicion and the fraud comes to light serendipitously." *In re Golf 255, Inc.*, 652 F.3d 806, 809 (7th Cir. 2011). The small portion of Lopinski's petition that actually challenges his civil judgment—as opposed to raising claims against new defendants—does not meet this definition. The allegations he raises now—that the evidence of his misappropriation of investor funds was false and that conflicting evidence was destroyed—would have been known from the beginning, and Lopinski should have raised those allegations during the almost three years between the commencement of the suit and his default. Yet Lopinski raised no defense in his civil case and pleaded guilty in his criminal case. Lopinski cannot challenge his liability now, six years after he completed his prison sentence, by recasting his objections to the evidence against him as a claim of "fraud on the court."

Accordingly, we AFFIRM the judgment of the district court.