In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2042

PETER J. PALKA,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO and MATTHEW TOBIAS,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 5211—**Nan R. Nolan**, *Magistrate Judge.*

No. 09-3796

PETER J. PALKA and TADEUSZ PALKA,

*Plaintiffs-Appellants,*

*v.*

CITY OF CHICAGO and
COOK COUNTY SHERIFF'S DEPARTMENT,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 2363—**Virginia M. Kendall**, *Judge.*

ARGUED DECEMBER 7, 2010—DECIDED OCTOBER 18, 2011

Before RIPPLE, KANNE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. In 2007 Peter Palka was dismissed as a probationary police officer in the officer-training program at the Chicago Police Academy. He claims he was fired because of his Polish ethnicity. The City says he was terminated because he violated departmental rules and repeatedly flunked the firearms exam. Peter's father, Tadeusz Palka, a Cook County Deputy Sheriff, contacted Matthew Tobias, Peter's supervisor at the Chicago Police Academy, and tried to get his son reinstated. That effort failed.

Peter's dismissal from the Academy set off a strange series of events. After Tobias rebuffed the elder Palka's plea for his son's reinstatement, an unidentified caller with an Eastern European accent placed an odd phone call to the school Tobias's children attended, asking suspicious and disturbing questions about the children. Tobias suspected that Tadeusz was the caller, and at his request the Cook County Sheriff began a formal investigation. A disciplinary hearing was scheduled, but Tadeusz took early retirement just before it was held. He then sued Cook County and its Sheriff, the City of Chicago, and numerous city and county employees asserting various constitutional claims under 42 U.S.C. § 1983. We affirmed the dismissal of that suit. *See Palka v. Shelton*, 623 F.3d 447 (7th Cir. 2010) ("*Palka I*").

Litigation by the Palkas proliferated, however. While *Palka I* was pending in the district court, Peter filed a § 1983 suit against the City of Chicago and Tobias. Later, Peter and Tadeusz together filed suit against the City and

County alleging employment discrimination in violation of Title VII. Peter's § 1983 suit was largely resolved in favor of the defendants; the district court granted summary judgment for the City and entered several rulings narrowly circumscribing the remaining claim against Tobias. In response Peter moved to voluntarily dismiss his claim against Tobias. That motion was granted, and Peter appealed. In the joint Title VII case, the district court applied res judicata and dismissed the claims of both plaintiffs. The Palkas appealed. We consolidated the two appeals and now affirm the judgments in both cases.

## I. Background

Much of the factual background is outlined in our decision in *Palka I.* We restate only the facts necessary to an understanding of the issues in the present appeals.

## A. Peter's Termination and Tadeusz's § 1983 Suit

On February 1, 2007, Peter Palka was terminated from his position as a probationary police officer in the officer-training program at the Chicago Police Academy. Matthew Tobias, the Assistant Deputy Superintendent of the Academy, recommended the termination to those higher up in the chain of command: Ellen Scrivner, the Deputy Superintendent of the Bureau of Administrative Services, and Bradford Woods, the Personnel Division Commander. Tobias told his superiors that Peter had violated departmental rules against lying, evasion, and

deceit when he revealed confidential information to another recruit during a training exercise designed to test officers' responses to harsh interrogations. Tobias's recommendation was also based on Peter's repeated inability to pass the firearms qualifying test, which was perhaps attributable to his (admitted) failure to read the department's firearms manual (another rules violation). Peter maintains that he was fired because of his Polish national origin.

Soon after Peter was terminated from the Academy, his father, Tadeusz Palka, then a Cook County Deputy Sheriff, contacted Tobias and argued for his son's reinstatement. Tobias refused, noting in particular Peter's failure to read the firearms manual. Two months later, in May 2007, an unidentified male called the school Tobias's children attended and asked suspicious questions about the children under the guise of being a "friend" who wanted to send flowers to the children for their birthdays. The school receptionist contacted Tobias about the strange call and told him that the caller had an Eastern European accent. Tobias suspected that Tadeusz was the caller and asked a colleague to investigate it. The colleague traced the call to a county building where Tadeusz sometimes worked.

Armed with this information, Tobias filed a complaint with the Sheriff's Department's Office of Internal Affairs and accused Tadeusz of placing the call. A formal investigation ensued, and Tadeusz was placed on paid suspension. In due course Internal Affairs filed a charge with the Sheriff's Department's Merit Board recommending

that Tadeusz be terminated. Just prior to the Merit Board hearing, at the suggestion of his supervisor, Tadeusz took early retirement. In *Palka I* he claimed that he was wrongfully induced to take early retirement in violation of his constitutional rights.

In that lawsuit—the first in this series—Tadeusz asserted claims under § 1983 against the County, the Sheriff, the City and a number of city and county law-enforcement officers in their individual capacities, based on allegations that they violated his substantive and procedural due-process rights and his right to occupational liberty. *Palka I*, 623 F.3d at 451. The complaint also included *Monell* claims against the City and County. The district court dismissed for failure to state a claim under any of these legal theories, and we affirmed. *Id.* at 453-55.

## B.  Peter's § 1983 Suit

Shortly after Tadeusz filed his complaint in *Palka I*, Peter filed a similar suit under § 1983 against the City and Tobias in his individual capacity. Peter alleged that Tobias had discriminated against him on the basis of his Polish ethnicity. He claimed that ethnic animus was the real reason for Tobias's recommendation that he be dismissed from the Academy and that the claimed performance problems were only pretext. Among other remedies, Peter sought reinstatement and back pay.

The defendants moved for summary judgment. The district court granted the motion, but only in part. The

court held that factual disputes about Tobias's reasons for terminating Peter precluded summary judgment on the claim against Tobias. But the court held that even if Peter could prove Tobias had a discriminatory motive for firing him, the City could not be held liable because Peter failed to adduce any evidence that Tobias was a municipal policymaker with final authority or that the City maintained a policy or custom of discrimination, as required for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Accordingly, the court entered summary judgment for the City; the claim against Tobias was allowed to proceed.

The parties thereafter consented to the jurisdiction of a magistrate judge, *see* 28 U.S.C. § 636(b)(1), who narrowed the scope of the relief available on the remaining claim. The magistrate judge held that Peter could not seek reinstatement as a remedy because Tobias was sued in his individual capacity and as such lacked authority to reinstate. Following this ruling, Peter moved for voluntary dismissal under Rule 41(a) of the Federal Rules of Civil Procedure. The magistrate judge thought dismissal without prejudice at that late stage of the proceedings might prejudice Tobias and sought to clarify the terms of the dismissal. *See* FED. R. CIV. P. 41(a)(2) ("[A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."). The judge said she would allow the voluntary dismissal of the claim against Tobias but would enter a final judgment dismissing the claims against the City with prejudice. Peter was given the opportunity to object to these terms but did not. The judge then dismissed the claims

against the City with prejudice, dismissed the claim against Tobias without prejudice, and terminated the case. Peter appealed.

## C.  The Title VII Suit by Father and Son

While both § 1983 suits were proceeding in the district court, Tadeusz and Peter were pursuing administrative remedies before the Equal Employment Opportunity Commission in anticipation of filing Title VII claims against their former employers. In February 2009 each received a right-to-sue letter. By this time the district court had already dismissed Tadeusz's § 1983 case, and his appeal was in its early stages. Peter's § 1983 case, meanwhile, was still pending in the district court, although the court had entered summary judgment for the City.

On April 17, 2009, the Palkas jointly filed a third suit against the City and County alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 200e *et seq.*[1] The complaint alleged the same basic facts as the individual § 1983 suits. The case was functionally two Title VII lawsuits, one by each Palka against his former municipal employer. The complaint sought "declaratory, injunctive and other equitable relief from discrimination in employment."

---

[1]  By this time, the magistrate judge in Peter's § 1983 case had dismissed the entire suit. Indeed, on the same day that the Palkas filed their Title VII action, Peter filed his notice of appeal in his § 1983 case.

The City and County eventually moved to dismiss on the basis of res judicata, and the district court granted the motions. The court held that the complaint "essentially combines the facts alleged in the separate prior complaints, and somewhat alters the telling of the story, but does not allege any new facts or events occurring after the Palkas' termination by their employers." The court rejected the Palkas' argument that res judicata should not apply because the cases were based on different legal theories. The court also rejected their contention that they could not bring their Title VII claims with their § 1983 suits because they had not yet received permission to sue from the EEOC. The court noted that the Palkas could have filed their EEOC claims earlier or asked to stay their § 1983 suits until they had their right-to-sue letters in hand. The Palkas appealed.

## II.  Discussion

Though the facts of the consolidated appeals overlap, the legal issues presented are distinct. We begin with Peter's § 1983 case and then move to the Palkas' joint Title VII suit.

### A.  Peter's § 1983 Claims

Peter seeks review of the district court's decision granting summary judgment for the City as well as the magistrate judge's order excluding reinstatement as a remedy against Tobias. Summary judgment in the City's favor was entirely appropriate; Peter has no evidence to

support a *Monell* policy-or-custom claim against the City. Peter's voluntary dismissal of his claim against Tobias bars our review of the judge's interlocutory order circumscribing the available remedies on that claim.

We note a jurisdictional matter first. The judgment below dismissed Peter's claim against the City on the merits but dismissed his claim against Tobias without prejudice on Peter's Rule 41(a) motion for voluntary dismissal. Dismissal of the latter claim without prejudice left Peter arguably free to refile it. This kind of split judgment ordinarily would not be considered "final" and therefore appealable under 28 U.S.C. § 1291 because it does not wind up the entire litigation in the district court. *See ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 235 F.3d 360, 365 (7th Cir. 2000). The purpose of § 1291 and the final-judgment rule is to prevent piecemeal appeals. On the face of it, that concern is implicated here.

However, when there is no chance that the case could be continued in the district court, the final-judgment rule is satisfied and we may take jurisdiction. *Id.* at 363 ("Whether a decision is final for purposes of § 1291 generally depends on whether the decision by the district court ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." (quotation marks omitted)). For example, where dismissed but revivable claims remain and would otherwise preclude appellate jurisdiction, we have permitted the party controlling those claims to "unequivocally dismiss[] [them] with prejudice" following an otherwise premature notice of appeal, thereby eliminating the jurisdictional

defect. *India Breweries, Inc. v. Miller Brewing Co.*, 612 F.3d 651, 657 (7th Cir. 2010); *see also Arrow Gear Co. v. Downers Grove Sanitary Dist.*, 629 F.3d 633, 637 (7th Cir. 2010) (same). Similarly, when an otherwise revivable claim cannot be refiled because the statute of limitations has run, its dismissal without prejudice does not preclude appellate jurisdiction over other claims that were dismissed on the merits. *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008). That is just the case here.

Peter's claim against Tobias was dismissed on March 18, 2009, and Illinois law (which controls for § 1983 purposes) provides a one-year statute of limitations for refiling a voluntarily dismissed claim. 735 ILL COMP. STAT. 5/13-217; *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 624 (7th Cir. 2007).[2] That time limit has expired, so any attempt to refile the § 1983 claim against Tobias would be time-barred. This removes any jurisdictional barrier to Peter's appeal of the order dismissing his claim against the City.

Our review of that order is de novo. *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010) (summary judgments are reviewed de novo). For the City to be liable, Peter must establish that Tobias acted pursuant to a municipal custom, policy, or practice. *Monell*, 436 U.S. at 691; *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). More specifically,

---

[2] The current version of this statute does not expressly refer to voluntary dismissals, but the law deleting that reference was held unconstitutional in its entirety in *Best v. Taylor Machine Works*, 689 N.E.2d 1057 (Ill. 1997).

> [t]o establish an official policy or custom, a plaintiff must show that his constitutional injury was caused by (1) the enforcement of an express policy of the [city], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority.

*Wragg*, 604 F.3d at 467 (quotation marks omitted). Absent proof that the injury in question was caused by an employee with final policymaking authority or by an express policy or established custom of the municipality, there can be no liability on the part of the municipality itself. In other words, unless Tobias was the final policymaking authority or was acting under a City policy, practice, or custom, the City cannot be liable for his actions; there is no respondeat superior liability under § 1983. *See Monell*, 436 U.S. at 691; *see also Waters v. City of Chicago*, 580 F.3d 575, 580-81 (7th Cir. 2009).

Peter advances what can perhaps be described as an "inaction" theory of municipal liability. He argues that because Tobias's recommendations regarding the dismissal of police recruits were generally approved and acted on by officials above him in the supervisory chain, the City may be held liable for its failure to stop Tobias's unconstitutional discrimination. For support he relies almost exclusively on the Sixth Circuit's decision in *Arendale v. City of Memphis*, 519 F.3d 587 (6th Cir. 2008). In *Arendale* a former Memphis police officer sued the City of Memphis under § 1983 claiming that he was the victim of a discriminatory termination. *Id.* at 593. Al-

though it rejected the officer's claim, the Sixth Circuit suggested that § 1983 liability could be imposed on a municipal unit of government based on a custom or policy of "inaction." *Id.* at 599. To prevail on such a claim, the court said the plaintiff must show:

> (1) the existence of a clear and persistent pattern of discrimination by municipal employees; (2) notice or constructive notice on the part of the City; (3) the City's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) that the City's custom was the "moving force" or direct causal link in the constitutional deprivation.

*Id.* at 599-600.

To us this looks more like a fact-specific application of ordinary *Monell* policy-or-custom doctrine than a new "inaction" theory of municipal liability under § 1983. Regardless, and without endorsing the "custom or policy of inaction" theory Peter urges upon us, the claim cannot survive summary judgment. Peter's evidence is meager, consisting only of his own subjective allegation that Tobias discriminated against him; a similar allegation by Wojciech Czarniecki, another Polish officer who was terminated by Tobias; and some "statistics" regarding recruits Tobias terminated.

To begin, the statistical evidence is worthless. It is simply a series of numbers without any context: "Of 51 recruits Tobias recommended for termination, all of whom were terminated by the Chicago Police Depart-

ment from the Academy, the breakdown was as follows: white 11; black 14; female 16; Asian 3; foreign ethnic 7; Hispanic 14; Middle East 1." It is entirely unclear what this evidence is meant to show. Is Tobias biased against men, who account for more than two-thirds of those terminated? Or is he biased against women because nearly one-third of those he fired were women and it is perhaps plausible that women account for less than one-third of the total number of recruits? Are "foreign ethnic" recruits included in the "white" group or are they separate? And, most fundamentally, how does this evidence show that Tobias was ethnically motivated? Without any context, these statistics are meaningless.

That leaves two allegations of ethnic discrimination by Tobias: Peter's own termination and the termination of Wojciech Czarniecki, another probationary officer of Polish descent. A different panel of this court has affirmed the dismissal of Czarniecki's discrimination claim against the City. *See Czarniecki v. City of Chicago*, 633 F.3d 545 (7th Cir. 2011). And two alleged instances of discrimination do not constitute a widespread pattern or practice sufficient to subject the City to liability. *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) ("[T]here is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance, or even three." (quotation marks and citation omitted)); *Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005) ("[Three] incidents do not amount to a widespread practice that is permanent and well settled so as to constitute an unconstitutional custom or policy about which

the sheriff was deliberately indifferent." (quotation marks omitted)).

Peter also contends that Tobias was a final policy-maker, but this assertion is counterfactual. Tobias's recommendations were reviewed by Bradford Woods, the Chicago Police Department's Personnel Division Commander. Because Tobias's decisions were subject to review and implementation by a higher authority, he cannot be a final policymaker for purposes of municipal § 1983 liability. *See, e.g.*, *Vodak v. City of Chicago*, 639 F.3d 738, 748-49 (7th Cir. 2011); *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001). Peter counters that the City's approval of a decision or policy made by someone else, even if that person is not himself a policymaking official, is sufficient to subject the City to liability. But to succeed on a "ratification" theory like this, a plaintiff must establish that the "ratifying" authority shared the unconstitutional motivation of the initial decisionmaker. "'[A] § 1983 claim . . . based on a ratifica-tion theory must allege that a municipal official with final policymaking authority approved the subordinate's decision *and the basis for it.*'" *Darchak v. City of Chicago*, 580 F.3d 622, 630 (7th Cir. 2009) (quoting *Baskin v. City of Des Plaines*, 138 F.3d 701, 705 (7th Cir. 1998)) (alteration and emphasis in *Darchak*); *see also Rasche v. Vill. of Beecher*, 336 F.3d 588, 598 n.11 (7th Cir. 2003). Peter has no evidence suggesting that Woods shared Tobias's alleged discrim-inatory animus. Thus, the City cannot be held liable on a ratification theory. The district court properly entered summary judgment for the City.

Peter also asks us to review the magistrate judge's order barring reinstatement as a remedy in his claim against Tobias.[3] He maintains that Tobias's presence in the case is a mere "legal fiction" because the City has defended and would indemnify him if necessary. He insists that whatever relief was available against the City should also be available against Tobias, even though he sued Tobias in his personal capacity.

This argument wouldn't get very far on the merits, but we cannot consider it. Peter sought and obtained the voluntary dismissal of his claim against Tobias. As we have noted, this effort to manufacture finality, when coupled with the expiration of the statute of limitations on the claim against Tobias, is sufficient to establish appellate jurisdiction over the merits dismissal of Peter's claim against the City, but it doesn't supply jurisdiction over an interlocutory order issued in connection with the claim Peter voluntarily dismissed. *See Chavez v. Ill. State Police*, 251 F.3d 612, 628 (7th Cir. 2001) (court "may not review claims that were dismissed pursuant to plaintiffs' request for voluntary dismissal" but could "review the district court's rulings with respect to the remainder of plaintiffs' claims"); *Boland v. Engle*, 113 F.3d 706, 714 (7th Cir. 1997) ("[W]hen a district court grants voluntary dismissal under Federal Rule of Civil Procedure 41(a), a plaintiff normally has neither the reason nor the right to

---

[3] Peter contends that the district court's ruling also precluded him from seeking a "front pay" remedy from Tobias. The court's order does not reference front pay.

appeal the dismissal because the plaintiff has received the relief it requested."); *Cauley v. Wilson*, 754 F.2d 769, 770 (7th Cir. 1985) ("Generally, a plaintiff may not appeal an order of voluntary dismissal without prejudice because the dismissal is the relief that the plaintiff requested.").

In this situation, it makes no difference whether the dismissal under Rule 41(a) was with or without prejudice. *See Cauley*, 754 F.2d at 771 (Rule 41(a) dismissal without prejudice); *Chavez*, 251 F.3d at 628 (Rule 41(a) dismissal with prejudice). What matters is that when the district court granted Peter's motion for voluntary dismissal, Peter received the precise relief he requested. Accordingly, he may not appeal.[4] *See Latham v. United States*, 527 F.3d 651, 652 (7th Cir. 2008) ("Section 1291 allows for review only by persons aggrieved by final decisions. Prevailing litigants—that is, those who received from the district court whatever relief they requested—cannot appeal under § 1291."). To put it another way, the interlocutory order precluding Peter from seeking reinstate-

---

[4] There is a narrow and rarely invoked exception to the general rule that an order granting voluntary dismissal is not appealable. If the district court imposes conditions on the voluntary dismissal, and if those conditions amount to "legal prejudice," the plaintiff then may have grounds for appeal. *See Parker v. Freightliner Corp.*, 940 F.2d 1019, 1023 (7th Cir. 1991). But "legal prejudice exists only when the grant of a dismissal severely circumscribes the plaintiff's ability to re-initiate his lawsuit." *Id.* at 1023-24. Peter does not argue that this exception applies here.

ment as a remedy against Tobias became moot the moment the claim was voluntarily dismissed. Peter was free to sacrifice his claim against Tobias for the right to take an immediate appeal of the court's order dismissing his claim against the City. But he cannot now obtain review of an interlocutory order issued in connection with the dismissed claim against Tobias.

### B.  Peter and Tadeusz's Title VII Claims

In the second case before us, Peter and Tadeusz claim they were the victims of employment discrimination in violation of Title VII based on their Polish ethnicity. The district court dismissed on res judicata grounds, concluding that the claims were based on the same set of facts that gave rise to each Palka's individual § 1983 suit.

Res judicata is a rule "of public policy and of private peace." *Hart Steel Co. v. R.R. Supply Co.*, 244 U.S. 294, 299 (1917). Where a final judgment has been rendered on the merits of a claim, res judicata protects the finality of that judgment and prevents parties from undermining it by attempting to relitigate the claim. Res judicata promotes predictability in the judicial process, preserves the limited resources of the judiciary, and protects litigants from the expense and disruption of being haled into court repeatedly. *Cf.* CHARLES ALAN WRIGHT, ET AL., 18 FEDERAL PRACTICE AND PROCEDURE § 4403 (2d ed. 2002) ("The central role of adversary litigation in our society is to provide binding answers. We want to free people from the uncertain prospect of litigation, with all its costs to emotional peace and the ordering of future affairs.").

In federal court res judicata has three elements: (1) an identity of parties; (2) a final judgment on the merits; and (3) an identity of the cause of action (as determined by comparing the suits' operative facts). *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 851 (7th Cir. 2009). Where it applies, res judicata prevents the relitigation of claims already litigated as well as those that could have been litigated but were not. *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 310 (7th Cir. 2010).

This case is a quintessential example of claim splitting in duplicative lawsuits, a litigation tactic that res judicata doctrine is meant to prevent. Identity of the parties is present because Peter sued the City in both his § 1983 and Title VII cases; likewise, Tadeusz sued the County in *Palka I* and here. That the Palkas' earlier suits included additional parties (e.g., Tobias, the Cook County Sheriff, etc.) is irrelevant. *See Czarniecki*, 633 F.3d at 549. Moreover, there is an identity of the causes of action because the Title VII claims are premised on the Palkas' termination by their respective municipal employers—the same transactions at issue in their § 1983 cases. *Id.* And there was a final judgment on the merits in the § 1983 cases. Although Peter's claim against Tobias was dismissed without prejudice, his claim against the City was decided in the City's favor on the merits. And Tadeusz's earlier claim against the County was dismissed with prejudice. *See Palka I*, 623 F.3d at 455.

The Palkas offer three arguments for not applying res judicata here, but none is persuasive. First, they argue that the district court applied the incorrect test for deter-

mining whether there is an identity of the causes of action. The district court applied the "same transaction test," which inquires whether the two suits share the same operative facts; the Palkas argue for application of what they see as a looser "same evidence" test under Illinois law. At issue here, however, is "whether an earlier *federal* judgment has preclusive effect on a subsequent federal claim," and federal res judicata principles apply to this question. *Czarniecki*, 633 F.3d at 548 n.3.

Second, the Palkas argue that one or more of the exceptions to res judicata outlined in the *Restatement (Second) of Judgments* applies here. In particular they rely on the section of the *Restatement* that states that the rule against claim splitting does not apply where "[t]he judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim." RESTATEMENT (SECOND) OF JUDGMENTS § 26(d). The Palkas raised this argument for the first time in their reply brief; it is, therefore, waived. *Bodenstab v. Cnty. of Cook*, 569 F.3d 651, 658 (7th Cir. 2009). The argument is also of doubtful merit. The Palkas do not explain how the earlier judgments are inconsistent with the fair and equitable implementation of Title VII. Indeed, we have held that Title VII claims enjoy no special immunity from res judicata. *See Herrmann v. Cencom Cable Assocs.*, 999 F.2d 223, 225 (7th Cir. 1993) (rejecting the EEOC's argument for "narrow construal of res judicata in Title VII cases on the ground that application of the doctrine disrupts the administrative procedures established by the statute"). Our decision

in *Herrmann* makes clear that traditional res judicata rules apply to Title VII claims.[5] *Id.*

Finally, the Palkas argue—without citation to authority—that as a practical matter it was impossible for them to preserve their Title VII claims because they were waiting for their right-to-sue letters from the EEOC. We have repeatedly rejected this argument. *See Czarniecki*, 633 F.3d at 550-51; *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 339 (7th Cir. 1995); *Herrmann*, 999 F.2d at 225. We have held that a litigant in this position has at least five options to preserve his claim: (1) he can "ask the EEOC or its state counterpart to accelerate the administrative process," *Herrmann*, 999 F.2d at 225; (2) he can seek an agreement with his former employer "not to plead the statute of limitations," *id.*; (3) he can "agree [with his employer] to split a single claim into two or more suits," *id.*; (4) he can "delay[] the filing of [the] first suit" until the last possible moment, *Brzostowski*, 49 F.3d at 339; or (5) he can "request[] that the court postpone or stay the first case" until he receives the right-to-sue letter, *id.* The Palkas availed themselves of none of these options.

In rejecting the Palkas' argument against res judicata, the district court observed that the last of these options—seeking a stay of their § 1983 actions while awaiting their right-to-sue letters—would have been a viable way for the Palkas to avoid claim splitting. On appeal the Palkas dismiss the court's suggestion as a

[5] The Palkas also invoke other res judicata exceptions outlined in the *Restatement* but fail to explain how they apply.

"totally ridiculous statement." They insist that "people who practice law for a living know" that no judge would ever allow such a stay. Insulting the court is never appropriate; this kind of argument crosses the line. Moreover, in light of what we have said about seeking a stay in this situation, the argument is baseless. *See, e.g.*, *Herrmann*, 999 F.2d at 225 (A plaintiff who files some claims to preserve them while exhausting Title VII administrative remedies could ask the district court for a stay and "would have a very strong case for doing so.").

We will never know what might have happened had the Palkas asked to stay their § 1983 cases until right-to-sue letters were forthcoming. As things stand, they split their claims and now ask us to refrain from applying settled res judicata doctrine. We decline the invitation. The district court was right to enter judgment for the City and County on res judicata grounds.

AFFIRMED.