NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 22, 2020[*]
Decided July 13, 2020

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-3711

| | |
|---|---|
| MARC NORFLEET, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of |
| | Illinois. |
| *v.* | |
| | No. 3:15-cv-00160-SCW |
| DONALD GAETZ, et al., | |
| *Defendants-Appellees*. | Stephen C. Williams, |
| | *Magistrate Judge*. |

**O R D E R**

Marc Norfleet, an inmate who uses a wheelchair, says he was denied access to equipment that he needs to exercise meaningfully, including free weights, a sports wheelchair, and palm-padded gloves. He filed this action against corrections officials and the Illinois Department of Corrections (IDOC) for violating the Americans with

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Disabilities Act, 42 U.S.C. § 12132, the Rehabilitation Act, 29 U.S.C. § 794, and the First and Eighth Amendments. The district court entered summary judgment for the defendants, finding that Mr. Norfleet had not offered evidence that his requested accommodations were necessary, that defendants denied him access to exercise, or that defendants took an adverse action against him. We affirm.

Mr. Norfleet suffers from two conditions that seriously limit his mobility: a severe back impairment (pre-dating his incarceration) that confines him to a wheelchair, and shoulder pain and stiffness that he attributes to lack of exercise.[1] In 2012, Mr. Norfleet was transferred to Pinckneyville Corrections Center, a designated ADA-compliant facility, where, he alleges, he was not afforded meaningful exercise opportunities, leading to arthritis, chest pain, stomach cramps, constipation, and migraines.[2]

Mr. Norfleet's limited range of motion and pain in his shoulders, coupled with his confinement to a wheelchair, prevented him from using any of the weight-bearing exercise equipment in Pinckneyville's gym, to which he had access once a week.[3] Because he could not use the equipment, Mr. Norfleet resorted to the prison's grievance system to gain access to free weights.[4] Swinging the weights at his side, he believed, could improve his range of motion, build his strength, and increase his heart rate.[5] Defendants denied his requests on grounds that free weights posed a security risk.[6]

Mr. Norfleet also maintained that his wheelchair was not sturdy enough to achieve meaningful exercise in the prison yards, which he could use seven hours a week.[7] Although Mr. Norfleet could wheel himself around the yards in certain spaces (sidewalks, basketball and handball courts, and a "lumpy" track), he said that he needed a sports wheelchair to avoid tipping over and to achieve true cardiovascular

---

[1] R.152-1 at 3–4, 9 (Norfleet Dep. 12:8–13:9, 14:18–23, 34:12–35:15).

[2] *Id.* at 4–7, 11 (Norfleet Dep. 14:18–25:17, 43:14–18). Mr. Norfleet has since been moved to Menard Correctional Center.

[3] *Id.* at 19 (Norfleet Dep. 73:15–20).

[4] R.1-1 at 35.

[5] R.152-1 at 11–12 (Norfleet Dep. 44:2–8, 44:21–45:3, 46:6–47:13).

[6] R.1-1 at 35–36.

[7] *Id.* at 31–32.

exercise.[8] Mr. Norfleet said he could not move his own chair quickly enough to raise his heart rate because the wheels and legs repeatedly broke down (he attested that they fell off approximately nine times between 2012 and 2017).[9] He submitted grievances requesting a new wheelchair, but each time defendants repaired the chair instead of upgrading it.[10]

Last, Mr. Norfleet requested palm-padded gloves to help him avoid painful blisters that developed when he pushed himself in his wheelchair to exercise.[11] Defendants denied this request, stating that he was offered gloves (which he refused because they were too slippery to use for exercise).[12]

In addition to being denied essential equipment, Mr. Norfleet also believes that he was subjected to retaliation.[13] He asserts that his requests for accommodations were rebuffed at the direction of IDOC's ADA coordinator in retaliation for being put to the trouble of testifying in connection with one of his prior suits.[14] As evidence of retaliatory intent, Mr. Norfleet highlights the coordinator's deposition testimony that IDOC's responsibilities under the ADA require it to provide only "access to recreation," and not to "ensure that a wheelchair-bound offender could access or use" a particular piece of exercise equipment.[15]

Mr. Norfleet filed this action against IDOC and various corrections officials for violations of the ADA and Rehabilitation Act, as well as the First and Eighth Amendments.[16] He sought injunctive relief to gain access to free weights, a sports wheelchair, and padded gloves, as well as declaratory relief and punitive damages.[17] The district court screened his complaint, *see* 28 U.S.C. § 1915A, and allowed him to

---

[8] R.152-1 at 17, 22 (Norfleet Dep. 65:19–67:17, 87:7–88:15).

[9] *Id*. at 18 (Norfleet Dep. 69:17–24).

[10] *Id*. at 28–29 (Norfleet Dep. 112:15–113:14); R.1-1 at 31–34.

[11] R.152-1 at 23–24 (Norfleet Dep. 91:13–95:22); R.1-1 at 34.

[12] R.152-1 at 24 (Norfleet Dep. 93:12–24); R.1-1 at 34.

[13] R.152-1 at 20–22 (Norfleet Dep. 77:16–86:2).

[14] *Id*.

[15] R.1-1 at 15 (Keane Dep. 47:22–48:3).

[16] R.1.

[17] *Id*. at 14–17.

proceed on a retaliation claim against the ADA coordinator; an ADA and Rehabilitation Act claim against IDOC for denying his requested accommodations; and an Eighth Amendment claim against several corrections officials for deliberate indifference towards his need for exercise.[18]

The defendants moved for summary judgment, which the district court granted in part and denied in part.[19] With regard to the retaliation and deliberate-indifference claims, the court found that Mr. Norfleet had offered no evidence that the ADA coordinator had taken an adverse action against him or that defendants deprived him of exercise opportunities.[20] The court, however, denied summary judgment on the ADA and Rehabilitation Act claim seeking injunctive relief against IDOC with regard to Mr. Norfleet's request for padded gloves.[21] The court found that a fact issue remained over whether Mr. Norfleet required specialized gloves to push himself while exercising, given his testimony that he gets blisters when he exercises without palm-padded gloves.[22] The court set that claim for trial and recruited counsel for Mr. Norfleet.[23]

Mr. Norfleet promptly filed a pro se motion for reconsideration, arguing that the district court's inquiry too narrowly examined whether he had access to exercise rather than whether this exercise was "beneficial and meaningful."[24] The district court struck that motion because Mr. Norfleet was counseled and no longer proceeding pro se.[25] Mr. Norfleet then asked the court to terminate counsel's representation and filed a second pro se motion for reconsideration.[26] The court agreed to let Mr. Norfleet proceed

---

[18] R.17 at 9–16. The court also severed a First Amendment retaliation claim against the warden into a separate case, dismissed an Eighth Amendment claim for denial of his medications as duplicative of a separate lawsuit, and dismissed a First Amendment access-to-courts claim for failure to state a claim. Mr. Norfleet does not pursue these claims on appeal.

[19] R.172.

[20] *Id.* at 24–28.

[21] *Id.* at 22–23.

[22] *Id.*

[23] *Id.* at 29; R.177.

[24] R.186 at 2.

[25] R.187.

[26] R.202 at 1.

on his own but ultimately denied the second motion because he had not identified any legal error.[27]

At a status hearing in December 2018, Mr. Norfleet voluntarily dismissed without prejudice his outstanding ADA and Rehabilitation Act claim concerning the gloves.[28] Mr. Norfleet says that he did so to make his case immediately appealable.[29]

Mr. Norfleet then appealed, but we directed the parties to submit memoranda clarifying the basis of our jurisdiction in light of Mr. Norfleet's voluntary dismissal of his remaining claim. As we explained, the judgment reflected that this claim had been dismissed *without* prejudice, and such judgments normally do not qualify as final and appealable because the plaintiff is free to re-file the claim.[30] After the parties responded, we ordered Mr. Norfleet to advise us whether he would dismiss his remaining claim *with* prejudice, warning him that his failure to do so could result in the dismissal of his appeal.[31]

Mr. Norfleet's response did not acknowledge our inquiry and instead addressed an order that we had issued in another appeal three weeks earlier.[32] Alluding to our statement in the other appeal that he was subject to a three-strikes filing bar that could "be reexamined in two years,"[33] Mr. Norfleet wrote that he would "not file any additional new 42 U.S.C. § 1983 claims in this Seventh Circuit as of April 9, 2019 throughout April 9, 2021."[34] We construed this statement, along with defendants' observation that Mr. Norfleet had only one year to re-file his claim regarding the palm-padded gloves, to mean that his claim was "effectively at an end," and we allowed the appeal to proceed to briefing.[35]

---

[27] R.225 at 3–4.

[28] R.230. No transcript of this hearing appears to have been prepared.

[29] Appellant's Br. 5; Reply Br. 16.

[30] App. R.17.

[31] App. R.25.

[32] App. R.27.

[33] *Norfleet v. Baldwin*, No. 19-1337, App. R.9 at 2 (April 9, 2019).

[34] App. R.27 at 3.

[35] App. R.28 at 1.

In his briefs on appeal, Mr. Norfleet now objects to the manner in which the voluntary dismissal of his remaining claim was carried out.[36] He asserts that he would not have proceeded with this appeal had he known that doing so would come at the expense of abandoning that claim.[37]

Mr. Norfleet's opportunity for pursuing this claim, however, comes too late and now is time-barred under Illinois's one-year statute of limitations for refiling a voluntarily dismissed claim. *See* 735 ILL. COMP. STAT. 5/13-217; *see also Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 550 (7th Cir. 1996) ("The ADA, like many federal civil rights statutes, does not contain a specific statute of limitations. Thus, the most appropriate state limitations period applies."). Mr. Norfleet voluntarily dismissed his outstanding claim about the padded gloves in December 2018. "[W]hen an otherwise revivable claim cannot be refiled because the statute of limitations has run, its dismissal without prejudice does not preclude appellate jurisdiction." *Palka v. City of Chicago*, 662 F.3d 428, 433 (7th Cir. 2011); *see also Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645, 649 (7th Cir. 2014). That is so even where the statute of limitations has run following an otherwise premature notice of appeal. *See Palka*, 662 F.3d at 432 n.1, 433–34 (noting that the expiration of the statute of limitations "remove[d] any jurisdictional barrier"); *see also India Breweries, Inc. v. Miller Brewing Co.*, 612 F.3d 651, 657 (7th Cir. 2010) (allowing a litigant to manufacture appellate jurisdiction by dismissing with prejudice revivable claims at oral argument). Thus our jurisdiction over this appeal is secure.

As for the merits of his appeal, Mr. Norfleet generally challenges the district court's entry of summary judgment on all his claims. Construing his pro se brief liberally, *see Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017), we understand him to take issue with the district court's conclusions that he had not created a material issue of fact with respect to his claims regarding reasonable accommodations, retaliation, and deliberate indifference. We review each of those claims de novo. *Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011).

We begin with Mr. Norfleet's reasonable accommodation claims. The analysis governing the ADA, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794, is the same, "except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons." *Jaros v. Ill. Dep't of Corrs.*, 684 F.3d 667, 671 (7th Cir. 2012). To defeat summary judgment, Mr. Norfleet needed to introduce evidence from which a jury could find that he is a qualified individual with a

---

[36] Appellant Br. 5; Reply Br. 16.

[37] Reply Br. 16.

disability (which is not disputed here) and that IDOC denied him the benefits of the prison's exercise and recreation programs because of his disability. *Id.* at 672. A refusal to provide reasonable accommodations that would enable a disabled prisoner to participate meaningfully in exercise programs would violate both statutes. *See id.,* at 671–72.

Mr. Norfleet argues that a material issue of fact remains over whether IDOC was required under the ADA and the Rehabilitation Act to provide him both free weights and a sports wheelchair as reasonable accommodations for exercise. As for the free weights, Mr. Norfleet needed to adduce evidence that they were necessary and would "affirmatively enhance [his] quality of life by ameliorating the effects of [his] disability." *Dadian v. Vill. of Wilmette,* 269 F.3d 831, 838 (7th Cir. 2001) (quoting *Bronk v. Ineichen,* 54 F.3d 425, 429 (7th Cir. 1995)). Mr. Norfleet, however, offered nothing beyond his own opinion that swinging free weights at his side would improve his strength, raise his heart rate, or improve his range of motion. In fact, Mr. Norfleet testified about his physical therapist's suggestion that his shoulders would benefit from range-of-motion exercises that do not require weights.[38] A reasonable juror could not conclude from the record that free weights would ameliorate the effects of his disability.

Nor can Mr. Norfleet prevail on his argument that a sports wheelchair was a necessary and reasonable accommodation. He urges that exercising in his wheelchair was impossible because it broke down on occasion (nine times over five years) and he continued to worry that it would break or tip over. As the district court observed, however, Mr. Norfleet testified that he was able to maneuver his wheelchair in the yards along the sidewalks, around three-fourths of the track, and across the basketball and racquetball courts. IDOC was not required to provide a perfect accommodation, or the one preferred by Mr. Norfleet; it needed to provide only effective access to meaningful exercise. *See Wright v. N. Y. State Dep't of Corrs.,* 831 F.3d 64, 72 (2d Cir. 2016). We sympathize with Mr. Norfleet's concerns about his wheelchair's durability, but he has not introduced sufficient evidence to call into question whether it deprived him of the opportunity for meaningful exercise.

Mr. Norfleet next asserts that a fact question exists with regard to the impetus for the retaliatory actions of IDOC's ADA coordinator—actions that, he believes, triggered the refusal of his requests for accommodations. According to Mr. Norfleet, the source of the retaliation can be traced to the deposition testimony that the ADA coordinator was forced to provide in a previous lawsuit he filed. As the district court explained,

---

[38] R.82 at 18–26 (Prelim. Inj. Tr. 18:24–26:21); R.152-1 at 11 (Norfleet Dep. 43:2–18).

however, Mr. Norfleet failed to introduce any evidence from which a reasonable jury could infer any adverse action on the coordinator's part—an essential element of the prima facie case for retaliation. *See Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020). Speculation is insufficient to defeat summary judgment, *see Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010), and Mr. Norfleet offered no evidence beyond his own speculation to suggest that the coordinator personally denied any of his requests for accommodations or that he instructed prison staff to deny them.

Finally, Mr. Norfleet asserts that a fact issue remained over whether defendants were deliberately indifferent to his need for physical exercise, given the onset of subsequent shoulder problems, constipation, stomach cramps, chest pain, and migraines. To stave off summary judgment, however, Mr. Norfleet had to offer evidence from which a jury could infer that he suffered an objectively serious deprivation and that defendants were deliberately indifferent to that deprivation. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Physical exercise may be "a necessary requirement for physical and mental well-being," *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001), but, as the district court appropriately concluded, Mr. Norfleet did not introduce evidence of an objectively serious deprivation of exercise. To the contrary, he testified that he had regular access to the prison yards, where he could maneuver his wheelchair in various spaces for exercise. And, although Mr. Norfleet attributes his health problems to insufficient exercise, he presented no medical evidence in support.

AFFIRMED