In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-1033

MATTHEW J. LEVY and JASON D. LEVY,

*Plaintiffs-Appellants*,

*v.*

WEST COAST LIFE INSURANCE COMPANY,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 21 C 4062 — **Matthew F. Kennelly**, *Judge*.

ARGUED MAY 24, 2022 — DECIDED AUGUST 10, 2022

Before EASTERBROOK, WOOD, and BRENNAN, *Circuit Judges*.

WOOD, *Circuit Judge*. For almost 20 years, Benita Levy held a life insurance policy with West Coast Life Insurance Company. Approximately five months before she died, Levy missed a payment. Upon her death, West Coast Life declared the policy forfeited because of the missed payment and accordingly refused to pay the benefit to her beneficiaries.

The beneficiaries—Levy's two sons—sued West Coast Life, seeking damages for breach of contract as well as a declaratory judgment. Their claims rested on section 234(1) of the Illinois Insurance Code, which forbids an insurer from canceling a policy within six months after a policyholder misses a payment deadline unless the insurer has given the policyholder a notice that meets certain requirements. See 215 ILCS 5/234(1). The district court ultimately dismissed the action for failure to state a claim. We affirm.

**I**

In 2001, Benita Levy, then a 37-year-old single mother of two, purchased a 20-year term life insurance policy (the "Policy") from West Coast Life. The Policy provided a $3 million benefit payable upon her death and named her only two sons, Matthew and Jason ("the Levys"), as beneficiaries. In January 2019, near the end of the 20-year term, Benita—then in deteriorating physical and mental health—missed a payment. Approximately five months later, she died, having never paid the missed premium. West Coast Life declared the Policy forfeited and refused to pay the $3 million benefit to her sons.

The Levys filed a lawsuit against West Coast Life for breach of contract and for a declaration that West Coast Life was legally obligated to pay them the benefit. (They initiated their suit in Illinois state court, but West Coast Life timely removed to federal court. See 28 U.S.C. § 1446.) The Levys alleged that West Coast Life's missed-payment notice—which was sent in late 2018 in advance of the early-2019 deadline—failed to comply with section 234(1) of the Illinois Insurance Code.

That part of the Code forbids an insurer from canceling a policy within six months of a policyholder's failure to pay a premium by its due date (calculated to include a 31-day grace period) unless the insurer provides a prescribed notice to the policyholder. See 215 ILCS 5/234(1). The notice "shall state that unless such premium or other sums due shall be paid to the company or its agents the policy and all payments thereon will become forfeited and void, except as to the right to a surrender value or paid-up policy as provided for by the policy." *Id.*

West Coast Life's late-2018 notice (the "Notice") incorporated much of the statutory language just quoted, as we explain in more detail below. Even so, the Levys alleged that it failed to comply with section 234(1). If that is correct, then West Coast Life was not entitled to cancel its contract with Benita Levy until at least six months after she missed her payment, and its cancellation at the five-month mark was ineffectual.

West Coast Life responded to the suit with a motion to dismiss for failure to state a claim upon which relief could be granted. See FED. R. CIV. P. 12(b)(6). In a written order entered on November 6, 2021, the district court dismissed some theories, but it did not dispose of the entire case at that point. It concluded that, at least in substance, the Notice complied with the statute. But it spotted some suggestion in the complaint that the Notice was sent to the wrong address, which would also be a violation of section 234(1). For that reason alone, the court denied West Coast Life's motion to dismiss the entire breach-of-contract claim (Count II). It did, however, dismiss both the claim for declaratory relief (Count I) and the other contractual theories.

At a hearing held on December 15, 2021, the Levys explained that they never meant to suggest that the Notice was sent to the wrong address. (They conceded, in fact, that West Coast Life sent it to the correct address.) Since the wrong-address theory was the only reason the district court had not granted West Coast Life's motion in its entirety, and since the Levys were pursuing no such theory, the Levys asked the court to dismiss their complaint in full so as to generate an appealable final judgment.

After a protracted and confused exchange between the parties and the court, the court suggested that the best course of action, to ensure finality and appealability, would be for the Levys voluntarily to dismiss any claims that remained, see FED. R. CIV. P. 41(a), and for the court then to dismiss the action as a whole with prejudice. After repeatedly stating for the record that they were abandoning *only* the wrong-address allegation, the Levys agreed to that course of action. The court then entered an order stating that "[p]ursuant to Federal Rule [of] Civil Procedure 41(a), plaintiff voluntarily dismisses any remaining claim that the Court has not already dismissed. Based on that the case is dismissed with prejudice." The Levys now appeal.

## II

We begin with a couple of preliminary points. First, we remind the parties, the district courts, and the bar as a whole that Federal Rule of Civil Procedure 58 requires (with only a few exceptions not applicable here) that "[e]very judgment and amended judgment … be set out in a separate document." FED. R. CIV. P. 58(a). No such document was filed in this case.

At one time, the absence of such a document might have had adverse implications for our appellate jurisdiction. But the Federal Rules of Appellate Procedure now address this situation. See *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384 (1978) (explaining that the separate-document requirement is not "such a categorical imperative that the parties are not free to waive it."); FED. R. APP. P. 4(a)(7)(B) ("A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58(a) does not affect the validity of an appeal from that judgment or order.").

That does not mean, however, that district courts should feel free to ignore Rule 58; indeed, Rule 58(a) uses mandatory language, stating that "[e]very judgment and amended judgment *must* be set out in a separate document … ." (Emphasis added.) The separate-document requirement serves the important purpose of "clarify[ing] when the time for appeal … begins to run," *Bankers Trust Co.*, 435 U.S. at 384, and so it should be heeded. The rule also invites any party to "request that judgment be set out in a separate document as required by Rule 58(a)." FED. R. CIV. P. 58(d).

Even though we have no Rule 58 judgment here, we do, however, have the court's order of December 15, which makes it clear that the district court was finished with the case. It states that "the case is dismissed with prejudice," and then says "Civil case terminated." The Levys filed their notice of appeal well within 30 days after that order, on January 7, 2022. This substantially complies with Federal Rule of Appellate Procedure 4(a)(1)(A), and so we may proceed.

The second preliminary point is somewhat messier. West Coast Life argues that we may not reach the merits of the breach-of-contract claim because the Levys voluntarily

dismissed that claim and have thus waived appellate review. West Coast Life cites various cases in which this court has articulated what we will call the voluntary-dismissal rule: a party that has received exactly what it requested (such as a judgment following a voluntary dismissal of a claim) cannot expect to obtain relief on that claim on appeal. See, *e.g.*, *Chavez v. Illinois State Police*, 251 F.3d 612, 628 (7th Cir. 2001); *Fairley v. Andrews*, 578 F.3d 518, 521 (7th Cir. 2009); *Palka v. City of Chicago*, 662 F.3d 428, 436 (7th Cir. 2011).

There was some suggestion in the briefs and at oral argument that the voluntary-dismissal rule addresses a problem of appellate jurisdiction. This is not so, though we can hardly fault the parties for thinking so. Our decisions have not always been as clear as they should be. See, *e.g.*, *Chavez*, 251 F.3d at 628. In *Fairley*, however, we sought to clarify matters. 578 F.3d at 521. We explained that "[t]he only prerequisites to appellate jurisdiction are a final judgment and a timely notice of appeal." *Id.* (citing 28 U.S.C. § 1291). "Whether a party consented to that judgment … is irrelevant." *Id.* Two years later, unfortunately, we once again seemed to describe the issue in jurisdictional language. See *Palka*, 662 F.3d at 436. But this apparent inconsistency reflects only an imprecise use of the term "jurisdiction."

The problem that some voluntary dismissals present on appeal is that "[l]itigants aren't aggrieved when the judge does what they want." *Fairley*, 578 F.3d at 521. Thus, "if plaintiffs consented to the entry of judgment against them, we must affirm." *Id.* In other words, there are cases in which no relief on appeal is possible because the party has not been aggrieved. This implicates Article III jurisdiction, not appellate jurisdiction. It is difficult to see how a party has an "injury in

fact" for purposes of Article III standing to sue when it receives exactly the judgment it requests. See *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–40 (2016). This is distinct from the question of appellate jurisdiction.

In light of the way the case unfolded here, we conclude that the voluntary-dismissal rule does not preclude our review of the merits in this case. The Levys can easily show continuing injury-in-fact, as they got far less than what they wanted. The district court ruled adversely to them with respect to most of their breach-of-contract theories and their entire request for declaratory relief. The fact that they voluntarily abandoned one last contractual argument does not transform this into an agreed disposition.

The transcript of the December 15, 2021 hearing supports our view of the proceedings. The court began the hearing by stating, "there's, you know, what I think can fairly be referred to as *a slice of the original claims* that are left, and it's *the thing based on the address*." (Emphasis added.) The Levys repeatedly expressed their "understanding [that] the only part of this case that's left is a claim that [West Coast Life] violated the code by sending this to the wrong address and [that they] are withdrawing any such claim."[1] And the court reassured

---

[1] We recognize that the district court may inadvertently have introduced some confusion into the case by stating in its final order that "plaintiff voluntarily dismisses any remaining *claim* that the Court has not already dismissed." (Emphasis added.) The remainder of the December 15 transcript makes it clear that plaintiffs' *voluntary* dismissal extended only to the address *theory*, and that the other three theories had already been dismissed by the court on November 6. With all theories gone (three involuntarily), the claim for breach of contract as a whole was resolved in West Coast's favor. This in turn paved the way for the Levys' appeal.

them, although perhaps with a hint of exasperation: "See, the wonderful thing about court reporters is that you have now said that about four times. That's about as clear as it can be. The court reporter got it all. I'm confident of that."

No one can read this and think that the Levys had acquiesced to the court's November 6 rejection of their contract theories. What happened is evident: the court understood that their wrong-address theory was abandoned, and it dismissed the rest of the theories supporting the breach-of-contract claim for the reasons it had expressed in its November 6th order. We are thus free to reach the merits of the Levys' arguments.

## III

We review "a district court's dismissal under Rule 12(b)(6) de novo, construing the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts and drawing reasonable inferences in the plaintiff's favor." *Bilek v. Federal Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (internal quotations omitted). To survive a motion to dismiss under Rule 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

We agree with the district court that the Levys' complaint falls short. Their chief contention is that the Notice did not adequately alert the policyholder (their mother) to the consequences of nonpayment. But the single-page, double-sided Notice addresses the consequences of nonpayment in three places. The front side of the Notice contains the following language: "If we do not receive your payment by 02/09/2019, your policy will terminate and lapse." The back side contains

a similar admonition, roughly halfway down the page: "If a payment is not made within the grace period as described in the policy, your policy will terminate and lapse unless otherwise provided." Finally, the first sentence on the back side of the Notice reads:

> Unless we receive your payment as requested in this notice by the stated due date or within the contractually specified grace period thereafter, your policy will terminate and lapse, at which time *the policy and all payments thereon will become forfeited and void, except as to the right, if any, to a surrender value, paid-up policy, or nonforfeiture benefit as may be provided for by the policy.*

(Emphasis added.)

The italicized language follows the statute almost verbatim. See 215 ILCS 5/234(1) ("[T]he policy and all payments thereon will become forfeited and void, except as to the right to a surrender value or paid-up policy as provided for by the policy."). We thus have no trouble concluding that it complies with section 234(1).

The Levys complain that this language appears on the back side of the Notice. But section 234(1) nowhere requires that the required language appear front and center. Significantly, too, West Coast Life did not bury the lede. A highly conspicuous disclaimer on the front side of the Notice directs policyholders as follows to "**[s]ee the reverse side for important notices**." On the reverse side, policyholders find the compliant language in the very first sentence at the top of the page, directly under another conspicuous header: "**IMPORTANT NOTICES**."

The Levys also complain that the Notice addresses the consequences of nonpayment in three different statements. This, they contend, makes the Notice confusing. But nothing in section 234(1) requires that an insurer's notice contain only one such statement. And as the district court observed, all three statements "convey[] a consistent message." Each warns that "your policy will terminate and lapse" should you fail to pay the premium on time. One of them elaborates: "[Y]our policy will terminate and lapse, *at which time the policy and all payments thereon will become forfeited and void*." (Emphasis added.) There is nothing confusing or inconsistent about these statements; one is just more detailed than the others.

The three statements are also consistent with respect to the payment due date. Under the Policy, policyholders have a 31-day grace period after the due date to make a premium payment before the Policy is forfeited. Thus, the relevant date for purposes of the consequences of nonpayment is 31 days after the due date. All three statements refer to that date in one way or another. The first refers to "02/09/2019" (the due date, January 9, 2019, plus 31 days); the second states that payment must be received "by the stated due date *or within the contractually specified grace period thereafter*"; and the third warns that the Policy will lapse "[i]f a payment is not made *within the grace period* as described in the policy." (Emphases added.) The message is consistent throughout: At the latest, policyholders must pay their premium before the end of the grace period to avoid forfeiting the Policy.

In short, the Notice adequately alerts policyholders to the consequences of nonpayment, and so the Levys cannot state a breach-of-contract claim on that basis. Their next contention is that section 234(1) requires that an insurer's notice inform

the policyholder that she may pay her premiums to the company *or* its agents. Because the Notice does not specify that payment may be made to an agent, the Levys argue that it does not comply with section 234(1). See 215 ILCS 5/234(1) ("Such notice shall also state that unless such premium … due shall be paid to the company *or its agents* the policy and all payments thereon will become forfeited and void") (emphasis added).

We reject that argument, although our reasons differ from the district court's. The district court reasoned that the use of the disjunctive means that a notice must state either (1) that policyholders must pay the company or (2) that policyholders must pay the company's agent. The Levys read it differently. They assert that a notice must state that policyholders must pay either (1) the company or (2) its agents. In other words, they say, the disjunctive modifies the policyholders' payment options, not the options the insurer has in drafting the notice.

West Coast Life offers a different and more persuasive interpretation, which views the pertinent language in its statutory context. Section 234(1) consists of only three sentences. The relevant language quoted above (*i.e.*, "the company or its agents") appears in the second sentence. The first sentence requires that a notice state "the place where [the premium] shall be paid and *the person to whom the same is payable*." 215 ILCS 5/234(1) (emphasis added).

West Coast Life highlights the use of the singular "person" in the first sentence. It argues that it would be incoherent for the second sentence of section 234(1) to require insurers to list multiple payees (*i.e.*, "the company or its agents") when the first sentence permits the insurer to list only one (*i.e.*, "the person to whom [the premium] is payable"). Because the first

sentence already specifies to whom payment must be made, the next sentence should not be read as creating a competing requirement. Instead, the phrase "the company or its agents" should be read as alluding to the earlier requirement that the notice identify "the person to whom [the premium] is payable." *Id.* Either the company or its agents will suffice. On this reading, the only new requirement created by the second sentence is the one we already have discussed: An insurer's notice must spell out the consequences of nonpayment.

We find West Coast Life's interpretation to be the better way to understand the statute. There was no need for the Notice to mention the company's agents as alternate payees, and so the Levys cannot state a breach-of-contract claim on this basis. For what it's worth, it seems the Illinois Appellate Court would agree. See *Time Ins. Co. v. Vick*, 620 N.E.2d 1309, 1316–17 (Ill. App. Ct. 1993) (concluding that a similarly worded notice "comports with the requirements of section 234(1)" despite the apparent absence of the phrase "the company or its agents").

As for the court's dismissal of the declaratory-judgment claim, we "review a district court's decision not to declare the rights of litigants for abuse of [] discretion." *Amling v. Harrow Indus.*, 943 F.3d 373, 379 (7th Cir. 2019). Since the Levys' breach-of-contract and declaratory-judgment claims were substantively identical, we find no abuse of discretion in the court's decision to dismiss the latter as duplicative.

**IV**

We **AFFIRM** the judgment of the district court.